CASE 28—PETITION EQUITY—OCTOBER 2.

# Hardin's ex'rs, &c. v. Harrington, &c.

### APPEAL FROM LARUE CIRCUIT COURT.

1. PRIOR EQUITY IN POINT OF TIME HAS THE PRIOR RIGHT.

    The recognized rule in regard to equities is, that he who has the prior equity in point of time has the prior right, and therefore a party resisting an equity, in order to maintain his defense, must protect himself either under an elder equity, or he must have purchased the legal title *bona fide*, without notice, for a valuable consideration; and not only so, but must have paid the purchase-money. (2 Story's Equity, 11th ed., p. 829.)

2. CONSTRUCTIVE AS WELL AS ACTUAL NOTICE will affect a purchaser.

    *But where the vendor had the land inclosed* and was residing upon it, and there was no fact or circumstance to put the purchaser upon inquiry as to equities in others, he will not be affected by such equities.

3. *If a person who has notice sells to another who has no notice*, and is a *bona fide* purchaser for a valuable consideration, the latter may protect his title, although it was affected with the equity, arising from notice, in the hands of the person from whom he purchased. (1 Story's Equity, p. 427; Arterburn v Gwathmey, 3 Bibb, 308; Lindsey v. Rankin, 4 *Ib*. 482.)

4. INFANTS HOLDING AN EQUITY in the land when the purchase was made, and the legal title acquired by an innocent purchaser, are in no better condition than they would have been in if they had been adults.

5. *The only question in such a case is*, was the purchaser guilty of fraud in making the purchase? If he had notice of the equity asserted by others, he was; if he had no such notice, he was not.

6. *When power is given to three executors to sell land*, and a deed is made by two of them, and the pleadings show that one of the executors was dead when the suit was brought, *this court will presume he died before the execution of the deed.*

7. EFFECT OF NOTICE BEFORE PAYING ALL THE PURCHASE-MONEY.

    Where it appears that one claiming to hold against a prior equity, on the ground that he was an innocent purchaser, had received a deed, but had not paid all the purchase-money when he received

notice, he will be liable to the holders of the equity for so much of the purchase-money as remained unpaid when he received notice.

M. H. COFER, } . . . . . . . . For Appellants,
W. P. D. BUSH, }

CITED

Revised Statutes, chapter 12, secs. 2, 4.
Story's Equity, secs. 409, 395, 396, 397, 398, 1502, 1503, 381, 64.
4 Bibb, 482, Lindsey v. Rankin.
1 Mar. 140, Moore v. Dodd.
1 Sumner, 506, 578, Wood v. Mann.
2 Sumner, 487, Flagg v. Mann.
7 Bush, 355, Harman v. Brewster.
7 Dana, 36, Cardwell v. Spriggs.
1 Met. 652, Stone & Warren v. Connelly.
2 Met. 359, Jones v. Lusk.

C. G. WINTERSMITH, }
W. B. READ, . . . . } . . . . . . For Appellees,
JOHN & J. W. RODMAN, }

CITED

Story's Equity, secs. 1356, 399, 400, 401, 402, 403, 404.
Revised Statutes, chap. 21, sec. 13.
3 Bibb, 349, Wooldridge's heirs v. Watkins.
4 Bibb, 484, Carmichal v. Elmondorf.
3 Mar. 381, Brown v. Hobson.
2 Litt. 115, Floyd v. Johnson.
2 Litt. 315, Saunders v. Saunders.
3 J. J. Mar. 248, Coleman v. McKinney.
6 Dana, 417, Smith v. Moore.
7 Dana, 1, Clay v. Hart.
9 Dana, 469, Smith v. Shackleford.
4 Met. 271, Wells v. Lewis.
4 Mon. 582, Halbert v. Grant.
1 Mar. 58, Cotton v. Hart.
7. Mon. 599, Nantz v. McPherson.
1 Litt. 352, Knox v. Thompson.
5 Litt. 240, McGowen v. Hoy.
1 Mon. 201, Brown v. Anderson.
1 Mon. 237, Hackwith v. Damron.
6 Mon. 205, Blight's heirs v. Banks.
9 B. Mon. 156, Owens v. Cowan.

4 Dana, 264, Morton v. Robards.
5 Dana, 53, Stewart v. Wilson.
4 B. Mon. 466, Hewitt v. Sturdevant.
4 Met. 190, Willis v. Vallette.
5 Mar. 26.                    4 Bush, 608.
2 Fonblanq, B. 2, p. 9, chap. 2, sec. 1.
7 Dana, 37, Cardwell v. Sprigg's heirs.
3 J. J. Mar. 549, Lillard v. McGee.
10 B. Mon. 186, Russell v. Petree.
14 B. Mon. 284, Ward v. Bank of Kentucky.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1847 William Harrington, the ancestor of the appellant, purchased of Richard Percifull two tracts of land in the county of Hardin at the price of eight dollars an acre. The first tract contained 125 acres and the second 25 acres, and adjoined each other, both tracts being regarded as one.

Bonds for title were executed by Percifull to convey the land, the boundary of the land to be thereafter ascertained by running with the lines of other lands adjacent to Harrington's land so as to include the quantity sold.  Harrington entered into possession at the date of his purchase, erected a dwelling, and inclosed five or six acres of the boundary.

In the year 1848 he assigned the bonds for title to his two infant children, Martha Jane and Nathaniel Harrington, and died in the year 1849, leaving his widow and the two children in possession, where they continued to reside until the institution of this action in January, 1861.

The land was surveyed prior to the death of Harrington, but its exact boundary, or the location of the lines, is left in much doubt by the testimony.

It is alleged by the appellees in the original petition and in the amended pleadings that Percifull, the original vendor of the land, is dead, and that no deed has been made to the land, although the purchase-money had long since been paid.

That one Martin Hardin purchased a part of the boundary of appellees' land from Percifull with notice of appellees' title

and possession, and that one of the appellants, John Akers, purchased the same land of Hardin with like notice, and now holds the possession.

It is also alleged that G. W. Akers has possession of a part of this land, claiming to have purchased of one Patterson, who obtained his title from Kerfoot, and he from Percifull; that he and his vendors had notice of appellees' equity.

It is further alleged that one Andrew Akers is in possession of a part of the boundary, claiming under a purchase from Mayfield, who purchased from Waide, and Waide from Percifull; that the rights of all these purchasers are affected by notice.

The parties in possession, as well as the heirs of Martin Hardin, being made defendants, deny all notice of appellees' title, and allege that they were innocent purchasers for a valuable consideration, having paid the purchase-money to their vendors and obtained deeds that are of record evidencing their title without any knowledge whatever that the appellees, or their ancestor, held the bonds of Percifull for title, or claimed to own the land in controversy.

The evidence shows that Hardin purchased a tract of two hundred acres of land from Percifull (Harrington's vendor) in the year 1852, and that the boundary of this tract includes about thirty-eight acres of the land previously sold to Harrington. Percifull made a deed to Hardin soon after his purchase, and the latter took possession, improved, and inclosed his land, and died in the year 1857.

The land when Hardin purchased, including his own and Harrington's, was uninclosed, except a few acres near the dwelling of the latter. After Hardin's death his executors sold and conveyed his tract of land to the appellant John Akers in December, 1858. Akers entered into the possession claiming under his purchase, and was in possession when the present petition was filed.

The proof shows that when Hardin and Percifull were making a survey of the land Hardin purchased, that in running the lines they interfered with the boundary of Harrington; but Hardin, insisting upon having his lines run as he had purchased, Percifull consented and agreed with Hardin that he would give to Harrington, or his heirs (Harrington being dead), as much land elsewhere. That Hardin knew of the interference with Harrington's boundary is shown by the statements of several witnesses, and this fact may be regarded as established, but there is no testimony of any character in the record conducing even to show that when John Akers purchased and paid his money to Hardin's executors he knew of appellees' claim or title, nor is there any evidence showing that G. W. Akers, at the time he purchased, had such notice.

All of these parties are claiming under a title derived from Percifull, the appellees having a bond for title only, and the appellants and their vendors exhibiting a regular chain of title by deeds of record.

Counsel for appellees base their right of recovery against John and G. W. Akers upon the ground that *their vendors had notice of appellees' equity* when purchasing from Percifull, and also argue that, as appellees were infants when the sales and conveyances were made to appellants, the want of notice on the part of the latter of the existence of this equity constitutes no defense to the relief sought. The recognized rule in regard to equities is, that he who has the prior equity in point of time has the prior right, and therefore a party resisting the equity in order to maintain his defense must protect himself either under an elder equity, or he must have purchased the legal title *bona fide*, without notice, for a valuable consideration; and not only so, must have paid the purchase-money. (2 Story's Equity, p. 829, 11th ed.) At the time John Akers purchased of Hardin's executors he was not only in ignorance of appellees' claim, but there was no fact or circumstance connected

with the transaction sufficient to put him on inquiry as to any claim adverse to the one he was purchasing. The land in controversy was not at that time in the possession of the appellees, but was within the inclosure of Hardin. The latter had been living on the land for many years, and after his death his widow and children resided upon it until the sale to the appellant John Akers, in the year 1858. The whole farm was inclosed, and there is no such evidence of any adverse claim as would have caused the most cautious to make any other investigation as to title, than to know that Hardin had paid the purchase-money and obtained a deed, and while it is conceded that constructive as well as actual notice will affect a purchaser, there was neither actual nor constructive notice of appellees' claim on the part of John Akers. · Lord Hardwicke says " that the taking of an estate after notice of a prior right makes one a *mala fide* purchaser." Yet an innocent purchaser from a vendor who is a *mala fide* purchaser can not be said to be guilty of fraud.

Courts of equity grant relief against purchasers with notice for the reason alone that to purchase under such circumstances is a fraud on the rightful claimant or owner, but this rule has never been carried so far as to grant relief against an innocent purchaser, although his grantor may have purchased in bad faith, and to do so would be to subvert the very principle upon which the relief is given. " If a person who has notice sells to another who has no notice, and is a *bona fide* purchaser for a valuable consideration, the latter may protect his title, although it was affected with the equity arising from notice in the hands of the person from whom he derived it, for otherwise no man would be safe in any purchase, but would be liable to have his own title defeated by secret equities of which he could have no possible means of making a discovery." (1 Story's Equity Jurisprudence, p. 427; Arterburn v. Gwathmey, 3 Bibb, 308; Lindsey v. Rankin, 4 Bibb, 482.)

That these appellees were infants when the purchase was made by the appellant places them in no better condition than their ancestor would be in if living, and the plaintiff in this action. If appellants were claiming under a former title and relied upon the statute of limitations as a bar to the recovery, their infancy would prevent the running of the statute, but no such question is involved in this case.

The appellants are not only relying on an adverse title, but are claiming that it is superior to the title of appellees, by reason of their having *in good faith acquired the legal title to the land in controversy without notice of this hidden equity.*

The right to relief in a case like this can not be made to depend upon the condition of the plaintiff; his disability, if an infant, gives him no superior equity, nor changes the policy of the law favoring the security of titles in protecting innocent purchasers who have expended their money and acquired the legal title against latent equities, although prior in date.

As to John Akers, the main question arising upon the facts as presented in this case is, Was he guilty of fraud when he made his purchase? If he had notice of their equity, appellees are entitled to relief; if not, a court of equity will make no distinction even when such an equity is asserted between adults and infants. The infants are not made to suffer by reason of any laches or failure to notify appellant of their claim, but the latter (the innocent purchaser) is protected because he has acquired the legal title in good faith and without wrong on his part; therefore the same equitable principle applies to both infants and adults; all the parties are alike innocent, one holding an equity, the other in possession with the legal title. "When courts of equity are called on to administer justice on grounds of equity against the legal title, they allow a superior strength to the legal title where the rights of the parties are in conscience equal." (2 Story's Equity, p. 830, sec. 1503.) Their bonds for title had been kept in the pockets of the appellees and their

ancestor for near fifteen years prior to this attempt to compel a compliance with its provisions, and in such a case, where they have stood by and permitted others to encroach upon their boundary and acquire the legal title from their vendee, the chancellor can see no equity in such a claim, as against a *bona fide* purchaser.

It is also urged by appellees that John Akers holds only an equitable title, for the reason that only two of the executors of Hardin unite in the execution of the deed under which he claims. This deed is made part of the record, and the pleadings of appellees show that one of the executors is dead; and this court will presume that he died prior to the execution of the deed to Akers, and particularly when the question now made is not presented by the pleadings, and the title of Akers is unquestioned except so far as he was affected by notice to his vendor. It does appear, however, upon an agreed state of facts, that John Akers, who purchased of Hardin, is yet owing the last payment on the land. To this extent he must be regarded as a purchaser with notice, and as holding the fund in trust for the appellees to the extent of their right to indemnity. Justice Story says, "that if the purchaser has paid part of the purchase-money, he will be protected *pro tanto* only." (Story's Equity, 9th ed., sec. 1502; Pickett v. Baum and wife, 29 Barbour, 505.) Hardin sold the land to Akers for $4,000, or twenty dollars per acre. He had notice of appellees' claim when he purchased, and the relative value of the land in controversy compared with the whole tract purchased by Akers, estimating the whole at $4,000, will be the extent of John Akers's liability, and this liability can not exceed the amount of the note and interest. (Flagg v. Mann, 2 Sumner, 487.)

As to Andrew Akers, the evidence shows that after his purchase from Mayfield he encroached upon appellees' land by moving their fence and taking possession of it. Waide's purchase did not interfere with appellees' boundary, and Andrew

Akers, who claims under Mayfield, the latter having purchased from Waide, has without right taken possession of nineteen acres of appellees' land, and for the recovery of which a judgment was properly rendered in this case.

As to the appellants, the heirs of Hardin, and G. W. Akers and John Akers, who were by the judgment of the court below required to make title to the land in dispute, the judgment is reversed and cause remanded with directions to dismiss the petition as to G. W. Akers, and to permit the appellees to amend their petition so as to assert their claim to the money in the hands of John Akers for the value of the land in his possession, upon the basis herein indicated, and for further proceedings consistent with this opinion.

Judge Cofer not sitting.