ROBERT L. McCORMICK *et al. vs.* MILBURN & STODDARD CO.

Argued Jan. 30, 1894.    Affirmed April 6, 1894.

No. 8459.

**Contract construed.**

> Certain provisions respecting a railway track to a warehouse, found in a lease of real property, construed. *Held*, that the landlords were not liable for extra expenses incurred by the tenant in doing business while railway privileges were suspended through no fault of the former.

**Claim not supported by the evidence.**

> *Held*, upon an examination of the record, that the evidence failed to show, as contended by the tenant, that its claim for reimbursement on account of said extra expense had been admitted and allowed upon a settlement with the landlords.

Appeal by defendant, the Milburn-Stoddard Company, a corporation, from an order of the District Court of Hennepin County, *Thomas Canty*, J., made September 5, 1893, denying its motion for a new trial.

The plaintiffs, Robert L. McCormick and Elias J. Woolf, on October 22, 1886, leased to defendant for five years their six story building on the corner of Third Avenue and Third Street in Minneapolis at an annual rental of $9,000 payable in monthly installments. This action was to recover $3,174 rent in arrear. Defendant for answer interposed a counterclaim for $2,938.56 damages for interruption of access by railroad track, and claimed that plaintiffs had allowed the claim and agreed to apply it upon the rent. At the trial and after the evidence was all submitted the plaintiff moved the court to dismiss the counterclaim and direct the jury to return a verdict for plaintiffs for the rent as claimed. The motion was granted and verdict rendered. Defendant duly excepted and moved for a new trial. Being denied, it appeals.

*Reed & Dougherty*, for appellant.

*Jackson & Atwater*, for respondents.

COLLINS, J. This was an action to recover rent for the use of a warehouse which had railway track privileges. While the building was under construction, the plaintiffs, as owners, entered into a

written agreement with defendant for a five-years lease, and at a later period, when the lease itself was executed, the agreement was expressly made a part of it. That portion of the agreement on the part of the landlords which is pertinent to this controversy is as follows: "Will also make continuation of track privilege a part of the lease; and, providing same has to be lowered so as to unload in the basement instead of first floor, we will do that at our own expense, and make doors or archways in the basement correspond with those now on the first floor." By the lease the plaintiffs demised, leased, and let unto defendants the warehouse with appurtenances and privileges, "including railway track privileges as now laid" on the premises. The plaintiffs also stipulated therein to "lower the railway track privilege on said premises, providing it becomes necessary to do so, according to the terms of" the agreement for the lease. When these writings were executed, both parties expected that the general system of railway tracks in that vicinity would be changed by lowering, and of necessity the warehouse track would be interfered with, and have to be lowered, with its connections.

The defendant tenant occupied the leased property for the full term agreed on, and during this time the tracks were lowered, but owing to a delay in performing the work on the main tracks, for which neither of these parties was responsible, the tenant was deprived of railway privileges and connections for a much longer period of time than was anticipated, and was thereby compelled to expend quite a large sum of money for draying and other extra labor about its business. Insisting upon its right to withhold this sum from plaintiffs, it counterclaimed for the amount in its answer in this action.

The plaintiffs contended upon the trial that the only obligation resting on them under the lease was to lower the warehouse or side track, to put in the proper doors or archways in the basement, and, as soon as practicable, to connect that track with the main railway lines as lowered; and that, having promptly done all of this, they were entitled to the agreed rental. The court below took that view of the case, and the principal question for determination is whether, under the terms of the lease, the landlords were required to reimburse their tenant for such extra expense as was necessarily

incurred in conducting the latter's business while the main tracks, over which the former had no control, were being lowered by the railway company. We are of the opinion that the landlords were not liable for any part of these expenditures.

There was no covenant in the lease for an uninterrupted use of the track, or for railway privileges at the warehouse, for the full period of five years. In fact, both parties anticipated that the track would have to be lowered, and the use of it temporarily suspended, at some time during the life of the lease, and, with this in view, expressly provided for it by stipulating that, should a change of track become necessary, the landlords should not only do the work at their own expense, but should also make certain alterations in the basement, so as to render the newly-located track available. Obviously, the plain provisions in this matter, found in each of the written instruments, preclude all claim that the uninterrupted use of the railway privileges during the whole term, or reimbursement for extra labor in case of suspension, was contemplated by either party, and conclusively dispose of the tenant's contention that track privileges were intended to be, or were, guarantied or warranted by the landlords for the whole term. Had there been such a guaranty or warranty, expressly or by implication, the landlords' obligation to lower the track and to fit the basement for use would have arisen without provision therefor. Neither party would have thought it essential to fasten, by express stipulation, the duty of making the changes upon the landlords, for it would have been fixed by law.

There is nothing in defendant's claim that the case should have been submitted to the jury upon the proofs relative to a settlement of the controversy and a statement of account between the parties. The testimony showed that, without regard to their legal rights under the lease, the plaintiffs felt inclined to make an allowance to defendant on account of the extra expense, and there was more or less conversation and negotiation on the subject. But on all occasions the plaintiffs questioned the correctness of the claim as presented, and insisted upon further and detailed information respecting the amounts said to have been paid out. This information was promised but was not furnished. The plaintiffs never acquiesced in the correctness of the charge as made, but in fact disputed

it. They never admitted a legal liability on account of the claim, but always questioned it. Under such circumstances there was nothing, by way of an account stated or otherwise, which approached a settlement and allowance of the demand in controversy.

Order affirmed.

CANTY, J., having tried the case while District Judge, took no part herein.

(Opinion published 58 N. W. 600.)