## Winlock, et al. Munday, et al.

(Decided January 14, 1914.)

### Appeal from Logan Circuit Court.

1. Equity—Title—Purchaser of Legal Title from Trustee—Trusts.— It is a fundamental principle that one who buys a legal title from

a trustee for value, and without notice of the trust, acquires the title discharged from the trust.

2. Equity—Rule in Regard to Equities.—The recognized rule in regard to equities is, that he who has the prior equity in point of time has the prior right, and therefore a party resisting the equity, in order to maintain his defense, must protect himself either under an elder equity, or he must have purchased the legal title bona fide without notice, for a valuable consideration, and must have paid the purchase money.

3. Equity—Purchaser of Land—Payment—Notice.—Where the purchaser of land deposited a certified check for the purchase money in the hands of a third party, to be held pending the execution of the deed, the check amounted to an appropriation of the purchase money, and is a payment thereof within the meaning of the rule that a purchaser will be protected only when he is a bona fide purchaser for value without notice, and must have paid the purchase money before notice of an outstanding equity.

BROWDER & BROWDER for appellants.

S. R. CREWDSON for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

G. R. Bayless, of Ft. Wayne, Ind., owned a tract of 688 acres of timbered land, in Logan County, Kentucky, which he had been trying to sell for sometime prior to February, 1912.

Richardson, a real estate agent at Russellville, and Perry, a like agent at Bowling Green, had had correspondence with Bayless, each of said brokers endeavoring to make a sale of the land; Richardson negotiating with Russellville buyers, and Perry with Bowling Green buyers.

Bayless had fixed his minimum price at $3,000.00; and prior to February 6, 1912, Richardson wrote Bayless that he thought he had a purchaser at that price. As a result of the correspondence, Bayless went to Russellville and made a verbal agreement with J. W. Munday and J. W. Dockins, by which he sold them the land for $3,000.00 of which $1,500.00 was to be paid in cash, and for the remainder of the purchase money a lien note for $1,000.00 was to be made payable to Mrs. Bayless, and a further lien note of $500.00 payable to the Hamilton National Bank of Indiana; both notes being payable twelve months after their date. As a guaranty of their good faith, Bayless required Munday and Dockins to put up a check for $300.00 as a forfeit, pending the completion of

the sale. A deed was executed by Bayless and his wife to Munday and Dockins, and by agreement of all parties concerned, the deed and the check for $300.00 were delivered to the National Deposit Bank of Russellville as an *escrow,* pending the examination of Bayless' title and a survey of the land. The bank was instructed that when Munday and Dockins became satisfied with the title, and had paid the remaining $1,200.00 upon the cash payment, and had executed the two lien notes which represented the balance of the purchase money, the deed would be delivered to Munday and Dockins, and the money, the notes, and the check for $300.00 would be delivered to Bayless. It does not clearly appear whether the bank president was authorized to make the delivery, or whether the parties to the transaction would attend to it themselves. This, however, is not material under the view we take of the case.

Bayless was anxious to return home, and persistently urged Munday and Dockins to close the trade. The survey was made under the supervision and at the direction and expense of Bayless, but there was some further delay in the examination of the title. It became necessary to get a copy of a will which constituted a link in the title, and was recorded in Jefferson County. Munday wrote for a copy of the will, and having received it on the morning of February 14, 1912, he went at once to see Bayless at his hotel, informing Bayless that he was ready to close the trade.

Bayless has not testified; but according to Munday, Bayless refused to go further with the sale, saying, "it was all off." Shortly thereafter Bayless left for Bowling Green, arriving there about noon. On the afternoon of the 14th, acting through Perry the Bowling Green real estate agent, Bayless sold the land to Winlock and Roberts for $3,000 in cash. The trade was perfected the next day—February 15th—by the parties drawing a deed of conveyance of that date from Bayless and wife to Roberts, and by Winlock depositing with the Warren State Bank six certified checks, which aggregated the $3,000.00 purchase money. The separate checks were given for convenience in removing the liens upon the property; one of them being for $1,122.74 to the Fidelity Trust Company; another for $500.00 to the Hamilton National Bank at Fort Wayne, Indiana; another for $82.26 taxes; another for $100.00 commissions due Perry,

while the remaining two checks were payable to Mrs. Bayless.

Winlock is a man of wealth, and bought this land at the suggestion of Roberts. Winlock paid the purchase money, but had the title conveyed to Roberts, the deed retaining a lien to Winlock for the $3,000.00 purchase money.

Bayless returned home carrying the deed with him, which he and his wife subsequently acknowledged on February 17th, and returned to the bank at Bowling Green; whereupon the transaction was completed by a delivery of the deed to Winlock and a delivery of the checks to the payees thereof.

On February 15th—the same day the sale was made by Bayless to Winlock and Roberts—Munday and Dockins instituted this action in the Logan Circuit Court against Bayless and the National Deposit Bank of Russellville claiming to be the owners of the land; praying that the bank be required to deliver to them the deed which it held in *escrow,* and that the deed from Bayless to Roberts be canceled.

Bayless answered, denying the title of the plaintiffs, and alleging that he had sold the property to Winlock and Roberts for $3,000.00, and that Winlock had paid the purchase money.

Upon their separate petitions, Winlock and Roberts were made parties to the action, each alleging that he was a *bona fide* purchaser for value, and without notice of plaintiff's claim or title, and denying plaintiff's title.

The chancellor sustained the claim of Munday and Dockins to the land; required the bank to deliver to them the Bayless deed which it held as an *escrow,* but subrogated Winlock to all the rights of Bayless by giving him a lien upon the land for his $3,000.00 purchase money. Winlock and Roberts appeal, and claim that the court erred in not sustaining their claim as *bona fide* purchasers for value, and without notice of appellees' claim.

Two questions have been argued upon the appeal: (1) Is the contract of Munday and Dockins within the statute of frauds, and (2) if it is not within the statute, are Winlock and Roberts *bona fide* purchasers for value and without notice of the prior equitable title of Munday and Dockins?

Passing the first question, we will consider whether Winlock and Roberts were *bona fide* purchasers for value, and without notice.

The appellees' failure to file their notice of lien or ownership in the county court clerk's office as is required by section 2358a of the Kentucky Statutes, eliminates from the case the question of constructive notice, and leaves the question one of actual notice only.

The claim of Munday and Dockins to an equitable title to the land in question rests upon their right to a specific performance of their contract under which they claim Bayless held the legal title to the land as trustee for them. It is a fundamental principle that one who buys a legal title from a trustee for value and without notice of the trust acquires the title discharged from the trust.

Lindsey's Hrs. v. Rankin, 4 Bibb., 482; Moore v. Dodd, 1 A. K. M., 140; Halstead v. Bank of Kentucky, 4 J. J. M., 554.

In Hardin v. Harrington, 11 Bush, 371, the rule was stated as follows:

"The recognized rule in regard to equities is, that he who has the prior equity in point of time has the prior right, and, therefore, a party resisting the equity in order to maintain his defense must protect himself either under an elder equity, or he must have purchased the legal title *bona fide,* without notice, for a valuable consideration; and not only so, must have paid the purchase money. (2 Story's Equity, p. 829, 11th Ed.)"

Does the purchase of Winlock and Roberts come within this rule?

Roberts had contemplated buying the land for sometime, and had heard that Bayless was in negotiation with Munday and Dockins, or some persons in Russellville. A short time, however, before the 15th of February, Roberts interested Winlock in the purchase of the land, and finally succeeded in getting Winlock to agree to buy it, as above indicated. Carrying out their agreement, Winlock completed the purchase on February 15th, by depositing his certified checks with the bank pending the return of the deed from Indiana. Winlock had never seen the land, and bought it wholly upon Roberts' judgment, with an agreement that Roberts should convey him a half interest therein, for $1,500.00, if Winlock desired the land after having examined it.

Before buying the land Winlock had made an examination of Bayless' title that satisfied him he could safely make the purchase.

On February 22, 1912, Munday's attorney at Russellville wrote to Perry, the real estate agent at Bowling Green, saying that he had heard of the sale to Roberts, and telling Perry to inform his client Bayless that Munday and Dockins had filed suit in the Logan Circuit Court, claiming the land under a purchase from Bayless.

Perry showed this letter to Winlock on the 23rd and it was the first information or knowledge that Winlock had that Bayless had ever been in negotiations with Munday and Dockins, or that they claimed the land. Upon receiving this information, Winlock telephoned to the county court clerk at Russellville, asking him if there had been any notice of lien or ownership filed in the clerk's office as is required by the statute. It is perfectly plain that Winlock had no notice whatever of the alleged equitable title of Munday and Dockins, prior to February 23rd.

It is insisted, however, that Roberts, the grantee named in the deed, had notice of the sale to Munday and Dockins at the time Bayless made the sale to Winlock and Roberts, and that he, therefore, is not a purchaser without notice. It is true Roberts knew that Bayless had been trying to sell the farm to several persons in Logan County; but on February 14th, Summers, who lived in Logan County and in the neighborhood of the land in question, having heard that the trade was off, telephoned that fact to Roberts, and Roberts immediately became active in making the purchase for himself and Winlock.

The proof is rathed indefinite, and unsatisfactory in many respects; but from a careful reading of it as a whole, we have reached the conclusion that there was no such knowledge brought home to Roberts as would put upon him a notice of any definite claim that Munday or Dockins had. Munday and Dockins were dickering with Bayless for the land, but Roberts in no way had any specific knowledge of the details of their proposed trade, or the point to which it had gone. His first knowledge of the suit was obtained through Winlock on February 23rd. At that time, however, the certified checks of Winlock for the $3,000.00 purchase money had been deposited with the bank at Bowling Green since February 15th.; the deed had been acknowledged by Bayless

and wife on the 17th, and, presumably, had been returned to the bank at Bowling Green.

It is insisted, however, that the purchase money had not been paid when Winlock and Roberts received notice of appellees' equitable title on February 23rd; and we are advised in the brief, that while the circuit court found that Winlock and Roberts did not acquire notice of appellees' claim until February 23rd, it nevertheless applied the rule announced in Hardin v. Harrington, *supra,* and sustained appellees' equitable title upon the ground that Winlock had not paid the purchase money until after February 23rd.

In cases of this character the general rule is that a purchaser of the legal title is not protected from a prior equity if he receives notice thereof at any time before payment of the purchase money. Simms v. Richardson, 2 Litt., 274; Hardin v. Harrington, 11 Bush, 367. In such a case the purchaser has no equity because he has lost nothing.

Did the placing of the certified checks with the bank constitute a payment of the purchase money so as to bring Winlock within the rule of a purchaser without notice? We think it did. The checks were certified, thus amounting to an appropriation of that much money then to the credit of Winlock's account, and binding on the bank. A certification of a check by a bank is in fact, an acceptance by the bank to pay the amount called for to the payee, upon presentment. The bank, therefore, held the checks for the payees thereof and not for Winlock; and upon the delivery of the deed by Bayless the checks became the property of the payees. In the meantime they were beyond the control of Winlock and presumably had been charged against his account. He could not have recalled them except with the consent of Bayless. Under these circumstances they constituted a payment of the purchase money on February 15th, the day they were placed with the bank; and as Winlock first had actual notice on February 23rd, he was a *bona fide* purchaser without notice of appellees' equity.

Our conclusion is that Winlock and Roberts had no actual or constructive notice of the appellees' claim at the time they made their purchase on February 15th, and being *bona fide* purchasers for value, it becomes unnecessary to consider the first question argued concern-

ing the enforcibility of the appellees' contract with Bayless.

Judgment reversed, with instructions to dismiss the petition.