PECOS & N. T. RY. CO. et al. v. GRUNDY
et al.    (No. 678.)

(Court of Civil Appeals of Texas.  Amarillo.
Nov. 21, 1914.  Remittitur filed
Nov. 24, 1914.)

1. TRIAL (§ 279*) — INSTRUCTIONS — OBJEC-
TIONS.

The objection, "failing to charge * * *
correctly the measure of damages * * * the
measure as to difference in market and actual
value," to the court's charge that, if it be found
part of the goods were damaged as alleged, the
jury will find such damages as were incurred
through the carrier's negligence, is insufficient to
show the trial court wherein was the error as re-
quired by Rev. St. 1911, art. 1971, as amended by
Acts 33d Leg. c. 59 (Vernon's Sayles' Ann. Civ.
St. 1914, art. 1971).

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 690; Dec. Dig. § 279.*]

2. DAMAGES (§ 105*) — LOSS OF SECONDHAND
GOODS—EVIDENCE.

The owner of clothing and household goods,
which had been used by him, and so were sec-
ondhand, may, in the action for their loss by a
carrier, testify to their value, the loss to him
in money, and not what they would sell for
in any market being the measure of damages.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 266–271; Dec. Dig. § 105.*]

3. EVIDENCE (§ 501*)—VALUE—QUALIFICATION
OF WITNESS.

To qualify the owner to testify to the value
of his wearing apparel and household goods,
lost by defendant, he need not state their cost
and the period of their use and their condition.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2292–2305; Dec. Dig. § 501.*]

4. CARRIERS (§ 105*)—DELAY IN TRANSPORTA-
TION—SPECIAL DAMAGES.

The carrier not being apprised that any
such special damages would ensue from delay
in transporting a car of household goods, recov-
ery cannot be had for board bills and room rent
paid by the owner while awaiting their arrival.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 451–458; Dec. Dig. § 105.*]

5. CARRIERS (§ 105*)—DELAY OF TRANSPORTA-
TION—DAMAGES.

The measure of damages for delay of a car-
rier in transporting household goods is the rea-
sonable value of their use to the owner during
the delay.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 451–458; Dec. Dig. § 105.*]

Appeal from Randall County Court; C. E.
Coss, Judge.

Action by J. A. Grundy and another
against the Pecos & Northern Texas Rail-
way Company and another.  Judgment for
plaintiffs, and defendants appeal.  Affirmed
on condition of remittitur.

Terry, Cavin & Mills, of Galveston, N. H.
Lassiter, of Ft. Worth, and Madden, Trulove
& Kimbrough and H. C. Pipkin, all of Ama-
rillo, for appellants.  B. Frank Buie and
Rector L. Lester, both of Canyon, for ap-
pellees.

HENDRICKS, J.  The appellees, J. A.
Grundy and L. T. Da Vault, sued the Pecos
& Northern Texas Railway Company and the
Chicago, Rock Island & Gulf Railway Com-
pany, in the county court of Randall coun-
ty, Tex., for damages with reference to a
shipment of a car of household goods from
McLean, Tex., to Canyon, Tex., claiming
damages for the loss of some of the goods
and for difference in value as to others, as
well as specific damages for the detention
of the use of the goods on account of un-
reasonable delay.  Upon a trial to a jury
the appellees recovered a verdict for $375.

[1] The appellants complain of the fifth
paragraph of the court's charge to the jury,
which was to the effect that, if the jury found
that a "part of the goods were damaged,
as alleged by plaintiffs, * * * " the jury
were to find such damages as they may find
were incurred on account of the negligence
of the carrier.  The objection to this charge
was that the court erred "in failing to charge
the jury correctly the measure of the plain-
tiffs' damage by reason of the alleged damage
to said goods, the measure as to difference
in market and actual value."

We take it that the purpose of the act of
the Thirty-Third Legislature with reference
to the presentation of objections to the
court's charge before the same is read to the
jury (article 1971) is to correct the court's
error—to lead the court to the truth of the
law—and places the burden upon the party
making the objections to show the court
wherein the error exists.  Appellants say:

"It is true that their objection * * * did
not particularly specify that the measure of
damages to certain of the goods was the differ-
ence in the actual value of the goods 'just prior
to and just subsequent to the alleged damage';
but * * * submit that by said objection
* * * they did suggest to the court the cor-
rect basis of plaintiffs' measure of damages."

Appellants did not submit any special
charge embodying a correct rule as to the
measure of damages.  In cases of this pe-
culiar character, under our interpretation
of the statute, the same having been passed
for the purpose of preventing reversals, un-
less the court is informed of his error, in
the condition of this objection, and the rec-
ord, it was not error to overrule the same.
See Memphis Cotton Oil Co. v. Tolbert, 171
S. W. 309, decided November 7, 1914, not yet
officially reported.

[2, 3] Under the fifth assignment of error
the bill of exception shows that Da Vault,
one of the owners of a part of the property,
testified as to the worth and value of a part
of the personal property, consisting of cloth-
ing, culinary articles, household parapherna-
lia, etc., stating the same item by item.  The
defendants objected to the witness "stating
what said items were worth, because said
questions and answers called for the opin-
ion and conclusion of the witness as to said
values, and the witness was not properly
qualified to state them, and that this was
not the proper method of proving the value
of said articles, or the proper measure of

damages for the loss thereof"—quoting from said bill of exceptions.

The plaintiff and witness was testifying to the value of the goods which had been lost by the carriers. The measure of damages referable to the destruction or loss of this character of property, as announced by Chief Justice Willie, in the leading case of Railway Co. v. Nicholson, 61 Tex. 550, is commented upon as follows:

"* * * The lost articles seem to be of such a character—namely, secondhand clothing, books, and table furniture which had been used by the plaintiff—that they could not be said to have to him a value at one place different from what they possessed at another. He could hardly have supplied himself in the market with goods in the same condition and so exactly suited to his purposes as were those of which he had been deprived. As compensation for the actual loss is the fundamental principle upon which this measure of damage rests, it would seem that the value of such goods to their owner would furnish the proper rule upon which he should recover; not any fanciful price that he might for special reasons place upon them, nor, on the other hand, the amount for which he could sell them to others, but the actual loss in money he would sustain by being deprived of articles so specially adapted to the use of himself and his family."

The Supreme Court, in the case of Missouri Pacific Railway Co. v. Colquitt, 9 S. W. 604 (not in State Reports), speaking through Chief Justice Stayton, reiterated and reaffirmed the same rule. If the value to the owner is the true rule, without any fanciful consideration entering into same, and from which criterion we are to deduce the rule of actual value, and not market value, we do not believe that the court committed positive error in permitting the testimony. In reading the decisions further with reference to the particular character of goods, we find that, though there may be a "secondhand" market for secondhand goods at destination, the secondhand price is so depreciated, compared to the actual or intrinsic value to the owner, that it is not just compensation for the actual loss; hence a "secondhand market" is an unjust rule. See P. & N. T. Ry. v. Porter, 156 S. W. 267.

The Supreme Court of New York, in the case of Fairfax v. Railway, 73 N. Y. 167, 29 Am. Rep. 119, in speaking of wearing apparel, said:

"It would sell but for little, if you put into market to be sold for secondhand clothing, and it would be a wholly inadequate and unjust rule of compensation to give plaintiff, in such a case, the value of the clothing thus ascertained. The rule must be the value of the clothing for use by the plaintiff."

The Supreme Court of Kentucky, following our courts, also quoting from the New York case, supra, further says:

"No two sets of secondhand effects of this kind are the same in condition; and therefore no standard of market value exists." Railway Co. v. Miller, 162 S. W. 76.

Wigmore (volume 1, § 716), in speaking upon kindred subjects and with reference to personal services principally, says:

"Here the general test that any one familiar with the values in question may testify is liberally applied, and with few attempts to lay down detailed minor tests."

And, continuing, said:

"The *owner of an article* [italics his], whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and courts have usually made no objection to this policy."

See note 2 and the numerous cases cited by the author. The author is also commenting upon household goods.

Chamberlayne, in his work on Evidence, (volume 3, § 2127), says:

"* * * An ordinary observer may properly estimate the value of familiar articles of personal property. So, generally, a designation may properly cover household furniture of any ordinary description, new or secondhand, * * * wearing apparel and the like. It would probably include stable equipment, such as carriages, horses, or barn fixtures."

In reading the numerous authorities and copious annotations in the notes relevant to the general text of the writers mentioned some of the authorities bear out the rule indicated and some of feeble importance sustaining the particular principle. It is necessarily true, as elements entering into the consideration affecting the value to the owner, that the cost of the articles, the period of their use, and their condition, with other pertinent data, as would enable the jury to arrive at a fair valuation, is important testimony; but we are unable to find any well-considered case, as to the peculiar property involved here, that the owner of the goods, as a witness, is required to state the elements mentioned as a precedent qualification to testify to the value. These goods were lost by the carrier and no witness produced by it as to the value of the property; neither does the record show any cross-examination by defendants of the witness attempting to ascertain the cost of said articles, the extent of their use, the kind and character of the same, or as to the condition of the goods at any time, but rely solely upon the general objections enumerated in the bill. If the value in this instance is at all fanciful, or if the ingredients of cost, the extent of the use of the property, the condition of same at the time of the loss would have indicated to the jury that the value placed upon the same by the owner was improper, we believe, in this character of case, it is the duty of the defendants to elicit it. If neither market value, nor secondhand value, nor the price for which he could sell the goods to others is a criterion for the compensation to the owner, but the value to him is the standard, from this underlying principle it seems to us that the owner of the goods could testify to the value, weak as it may be.

The case of Seyfarth v. Railway Co., 52 Mo. 450, involved the testimony of husband and wife as to the value of goods of a

kindred character, as in this record, and the Supreme Court of Missouri said:

"The subject of inquiry was not one to which the doctrine in reference to experts applied; and it cannot be questioned that the opinion of this witness as to the value of the articles was clearly admissible under the circumstances. The evidence being competent, the plaintiff was not obliged to restrict the examination to the value of each article, and in that way arrive at the total value; nor was it incumbent on him to show the process by which the conclusion of the witness was reached."

The Supreme Court of Nebraska said, in the cause of Western Home Insurance Co. v. Richardson, 40 Neb. 10, 58 N. W. 600:

" * * * We think it was competent for the witness (in this instance the owner of the goods) to state the value of the stock in the store. Such evidence was not the statement of a conclusion, but of a fact. If the defendant desired, he could, on cross-examination, have interrogated the witness as to the value of the different articles and kind of goods."

The Supreme Court of Michigan, in the case of Erickson v. Drazkowski, 94 Mich. 551, 54 N. W. 283, said:

"Plaintiff and her husband testified to the value of the property taken, but it is insisted that their competency to testify upon the question of value did not appear. The articles seized were such as housekeepers are accustomed to buy, and householders must be presumed to have such knowledge upon the subject as to render them competent to testify as to the value of such articles."

To the same effect, in practically the same language, is the case of Tubbs v. Garrison, by the Supreme Court of Iowa, 68 Iowa, 44, 25 N. W. 923. We believe we could extend the authorities on this question unnecessarily, and our elaboration of the question is induced by the serious insistence of the appellants, and the reference by them to the case of Railway Co. v. Giles, 126 S. W. 282, announced by the Court of Civil Appeals of the San Antonio District, and the case of St. Louis & Southwestern Railway Co. of Texas v. Benjamin, 161 S. W. 379, by the Dallas Court of Civil Appeals, on the same question, and contended by appellants, as announcing the contrary doctrine. Whatever the effect of those decisions, we believe the foregoing rule, is the correct rule, and consequently overrule the assignment. We likewise overrule appellants' companion assignment complaining of the admission of the testimony delivered by the wife with reference to the value of certain enumerated articles along the same line.

[4, 5] In this case both appellees, as owners of the car of goods, recovered the sum of $64.75—at least we have to presume such a recovery—as items claimed to have been paid by them for board bills and room rent on account of the alleged unreasonable delay in the shipment of said goods to destination. (Objected to by the defendants, both to the pleading setting up such damages, and to the testimony proving the same.) We disagree with appellees that the character of damages pleaded and recovered by them is consequential, necessarily resulting from the injury, and agree with appellants that they are in the nature of special damages, to be properly alleged by setting up the special circumstances, and as having brought to the attention of the carriers at the time the contract of shipment was made. This record is silent that the carriers knew, or were apprised of any circumstances, either by the pleading or the evidence, that the special damages would ensue from a nonperformance. The mere making of a contract with the carriers to ship a car of household goods, we do not believe it could be said, would induce the expectation of the carrier to foresee that the shippers, without any further knowledge, would be required to rent rooms and pay hotel bills as a necessary consequence of the delay. The familiar rule measuring the damages for unreasonable delay as to the shipment of articles of this character, is the reasonable value of the use of the property to the plaintiff during the time of the delay. M., K. & T. Ry. Co. of Texas v. Clifton, 80 S. W. 386, 387; Gulf, Colorado & Santa Fé Ry. Co. v. Vancil, 2 Tex. Civ. App. 427, 21 S. W. 303; Texas & Pacific Ry. Co. v. Douglas, 30 S. W. 488; Hutchinson on Carriers (3d Ed.) vol. 3, § 1363. In the Douglas Case, supra, it seems that the trial court permitted plaintiff to show the purchase by her of clothing for herself and child, and the cost of laundry of clothing while waiting for the delivery of the trunk; and Justice Rainey said, after applying the ordinary measure of damages: "Such expenses are too remote to enter into the measure of damages, in such a case." The record here does not indicate that the carrier even knew that the appellees were married. Appellants' assignments on this question are sustained, and the elements of damages as indicated should not have been submitted to the jury. On that account this cause is reversed and remanded, with the right extended to appellee to file a remittitur within ten days for the sum of $65.30, which, if done, the cause will be affirmed, but, if not done within that time, the whole cause will be remanded, and it is so ordered. The costs are to be taxed against appellees in either event.

There are no other assignments deserving consideration, except to say that the charge of the court wherein the expression "reasonable value," instead of "actual value," is used, referable to the measure of damages, in the condition of this record, could not have misled the jury.

NOTE.—Remittitur of $65.30 filed by appellees November 24, 1914.