## FULLER v. PEABODY et al.

(Circuit Court of Appeals, Sixth Circuit. October 8, 1924.)

No. 4016.

1. **Vendor and purchaser** ⊜⟹226(2)—**Deposit of purchase price in escrow gives status of bona fide purchaser.**

Where a purchaser under a contract with a vendor, having power to sell, has put the purchase price in escrow beyond recall, to be paid over on execution of the necessary deeds, he occupies the position of a bona fide purchaser, with an equity superior to one not of record, and of which he had no notice, and which is then asserted for the first time.

2. **Partnership** ⊜⟹279—**Power given by partnership to sell lands conveyed to trustee not revoked by termination of partnership.**

When a partnership owning land vests the legal title in a trustee, with power of management and sale, the end of the partnership for any reason does not revoke the power.

3. **Courts** ⊜⟹269—**Federal District Court held without jurisdiction of suit as local suit.**

Where a trustee, with power of sale, had made a sale of land, which was valid and equitably complete, so that the equitable title had vested in the purchaser, the District Court of the district in which the land is situated *held* without jurisdiction, under Judicial Code, § 57 (Comp. St. § 1039), by service on nonresident defendants outside the district, of a suit by one claiming an interest in the property

through the trustee, to establish his rights and to enjoin any further action, except in recognition thereof.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit in equity by Thomas C. Fuller against Stuyvesant Peabody, trustee, and others. From a decree dismissing the suit, complainant appeals. Modified and affirmed.

William T. Fowler, of Frankfort, Ky. (O'Rear, Fowler & Wallace, all of Frankfort, Ky., on the brief), for appellant.

Wallace R. Middleton, of Detroit, Mich., and Henry Fitts, of Chicago, Ill. (Barthell, Fitts & Rundall and Winston, Strawn & Shaw, all of Chicago, Ill., Miller & Otis, of New York City, Clifford B. Longley, of Detroit, Mich., and James H. Jeffries and Cleon K. Calvert, both of Pineville, Ky., on the briefs), for appellees.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. This case turns upon the question whether there was jurisdiction in the District Court under section 57 of the Judicial Code (Comp. St. § 1039). That court thought not, and dismissed the bill of appellant, Fuller.

Fuller had interests in and options upon various parcels of Kentucky land, capable of being put with others and assembled into a large tract. To carry out such a plan, he joined with others in forming what is known as the "Peabody Syndicate," and the 10 associates fixed their respective rights, powers, and interests by a somewhat elaborate document known as the "first syndicate agreement," of January, 1917. By its terms Fuller was to put into the pool all his interests and options and his services. Others of his associates were to contribute the capital, which would be necessary in a large amount. Fuller was not to furnish any money. The land so to be assembled was to be handled and sold, and Fuller was to have a one-tenth interest. For the purposes of this opinion, we may assume that Fuller would have an interest in the equitable title to the body of land, and that, under section 57, the court below, by reason of the presence of the land in the district, would have jurisdiction of any equitable proceeding brought by Fuller to ascertain or to protect his equitable interest; but the necessities of Fuller's case go far beyond that assumption.

For present purposes, the important provisions of the syndicate agreement are that Peabody was appointed syndicate manager and trustee; that certificates of interest were to be issued to the contributing parties; that the trustee was given "full and complete control and authority of all the business affairs, funds, and property which is now, or may hereafter be, owned or acquired by the trustee for this syndicate"; that title to the lands might be taken in the name of the trustee, or in other names, but should be held by the trustee for the benefit of the syndicate; and, by paragraph 9, that "said trustee, if he elects so to do, may for the benefit of the syndicate sell, exchange, or otherwise dispose of all or any part of the contracts and options referred to in Exhibit A, or of the property described therein, and accept in lieu thereof, or in payment thereof, stocks, bonds, cash, or other property or certificates of interest."

Very shortly afterwards, or simultaneously, the scheme was somewhat modified and enlarged, as evidenced by the "second syndicate agreement," which named the same manager and trustee, and which by paragraph 6 gave to the trustee the same power of sale given by paragraph 9 of the first agreement. Fuller's interest was, by this second agreement, retained and increased.

It appears that along in 1918 all of Fuller's interests in the enterprise were said to have been pledged as collateral to debts owing by him, and that this pledge was foreclosed, and his interests sold to others, who claimed that he ceased to be interested in the subject-matter. Fuller's bill of complaint challenges these transactions, and denies that his interests ever lawfully passed away from him. He filed it in April, 1923. He alleged that the efforts to deprive him of his interests had been fraudulent on the part of the trustee and his associates, and that a sale was under negotiation to the Fordson Coal Company, which sale would not recognize him. He prayed that his interests be ascertained and declared, and that any action by the trustee and others not in recognition thereof be enjoined. He made defendants to his bill the syndicate trustee and associates and the Fordson Coal Company. It was alleged that each one of the defendants was a citizen of a state other than Kentucky, and it did not state that any defendant resided in or could be found in Kentucky. The defendant Fordson Coal Company, the expectant purchaser, and the defendant Semet Solvay Company, one of the syndicate associates, were nonresident corporations, which had places of business in Kentucky and agents authorized to re-

ceive service. Accordingly process was served on them, but no attempt was made to serve any others, excepting as proceedings for substituted service were taken under section 57. The two defendants so served separately moved to dismiss the bill for lack of jurisdiction.

Plaintiff, by an amended bill, propounded to the defendant the Fordson Company elaborate interrogatories intended to develop just what had been done in the way of purchase by the Fordson Company. These interrogatories were fully answered. The Fordson Company also filed an answer in the nature of a cross-bill, by which it claimed to be a good-faith purchaser of the lands and to have a perfect title thereto, and asked that title be quieted. Fuller thereupon filed a further amended bill, which accepted as facts most of the disclosures made by the Fordson Company and incorporated them, apparently in an effort to state what Fuller thought to be the complete facts of the situation, so that the question of the jurisdiction and power of the court would be fairly presented on the face of the bill. Motions to dismiss were made, and after an argument of these motions the court decided that the bill did not show jurisdiction, and after plaintiff had declined to plead further entered the order dismissing the bill.

By these amendments, it appears that the Fordson Company had been long in negotiations with the trustee regarding buying the lands; that on January 17, 1923, these negotiations culminated by written offer to buy for a stated price within 60 days if the title was found satisfactory, and by the trustee's written acceptance of the offer; that this option was closed on March 17, 1923, by the deposit by the Fordson Company in a Chicago bank of the entire agreed purchase price—$2,783,000—in connection with an escrow agreement, accepted by the bank, by which it was to pay to the trustee $2,500,000 upon the receipt of his deed of conveyance, accompanied by deeds of release signed by all but two of the associates in the syndicate, whose names had been furnished by the trustee as the parties beneficially interested, or by the heirs of representatives of those deceased, but not including Fuller. The remainder of the purchase price was to be paid over to the trustee, in specific amounts named, upon the release of specific incumbrances and upon release made by the other two of the syndicate associates. It is also provided that at any time the whole or part of the funds should be paid over upon the joint order of the syndicate manager and

a representative of the purchaser. It is not claimed that, until after the payment of this purchase price to the bank, the Fordson Company had any notice that Fuller was claiming any rights in the property, or denying the right of the trustee to sell and give a good title; nor is it claimed that the price is not an adequate one, fairly agreed upon between the trustee and the Fordson Company, dealing at arm's length.

[1] In this situation, and assuming that the trustee had the power to sell, we think it clear that the Fordson Company was entitled to the position of a good-faith buyer, and that the sale must stand, even though we should assume that at an earlier stage of their negotiations Fuller might have maintained a bill against the trustee and the Fordson Company to declare his interest and to prevent its transfer to a good-faith purchaser. It is true that where a deed is deposited in escrow, to be delivered to the buyer when he pays the purchase price, the title does not pass, at least until all the conditions of delivery are performed; but where the purchaser has put the purchase price in escrow, to be paid over upon the execution of the necessary deeds, and by the terms of the escrow agreement has no power to recall that deposit, we are cited to no authority, and we do not know of any principle, which will prevent a court of equity from treating him as having an equity superior to an outstanding one then first appearing on the scene. He has fully performed his contract, and he has irrevocably parted with the purchase price. He can, in this case, make no claim that he would not get the title which he supposed he was buying, and so can have no equity to withdraw. In closely similar circumstances, the Court of Appeals of Kentucky has held that the vendee became a good-faith purchaser. Winlock v. Munday, 156 Ky. 806, 162 S. W. 76.

[2, 3] Since the trustee and the depositary both reside at Chicago, and the fund is there, it is quite clear that, in this stage of the transaction, the Kentucky District Court has no in rem jurisdiction. Fuller seeks to avoid this result upon one theory, and one only. He says that the syndicate agreement constituted a partnership, and that, when one of the partnership associates died—as did happen—the partnership was dissolved, and the authority of the trustee to sell expired, and each of the associates became a tenant in common for his fractional interest. The District Judge thought it unnecessary to decide the precise character of the syndicate agreement in this respect, and we agree. The

grant, by the beneficiaries to the trustee, of the right to sell, found in section 6 of the agreement, and the contemplated and executed conveyance of the legal title to the trustee, furnish the most common instance of a power coupled with an interest, and such a power survives the donor. Hunt v. Rousmanier, 8 Wheat. 174, 5 L. Ed. 589. When a partnership owning land vests the legal title in a trustee, with power of management and sale, the end of the partnership, for any reason, should not revoke the power any more than does the death of the individual grantor, and we see no reason why the full power of sale given to Peabody did not survive the death of one or two of the beneficiaries.

It follows, therefore, that the sale from the trustee to the Fordson Company is valid and equitably complete, as against plaintiff's alleged rights, and hence that the court had no jurisdiction under section 57. Grable v. Killits (C. C. A. 6) 282 F. 185, 194. The bill should have been dismissed for want of jurisdiction. It is not entirely clear that the final decree below was solely on this ground, and it should be modified accordingly, but in all other respects affirmed. The appellee will recover costs.