### DALLAS HOTEL CO. v. BLANCHETTE et al. (No. 8718.)

(Court of Civil Appeals of Texas. Dallas. Dec. 21, 1922. Rehearing Denied Jan. 13, 1923.)

1. **Evidence** ⬿501(7) — Witness not knowing original cost of coat lost held entitled to testify to value of like coats.

In an action against a bailee for loss of a fur coat, the owner, though testifying she did not know the cost of the coat, was properly permitted to testify to the value of such coats after having testified fully as to its quality, and that she had observed similar coats in possession of various dealers in the city, and had noted the prices and had examined in various shops coats of like character, and had stated the price asked therefor.

2. **Evidence** ⬿142(4) — Testimony of witness who had not seen the coat lost as to value of similar coats held admissible.

In action against a bailee for loss of fur coat, testimony of a dealer in new coats, who had never seen the coat in question, that, while he knew nothing of the value of the second-hand apparel of the kind, and could not testify as to the original value of the lost coat, he could state the value of a coat of the description of that lost, was admissible.

3. **Damages** ⬿105 — Intrinsic value to owner of lost coat held measure in absence of market value.

Where, in an action against a bailee for loss of a fur coat, the plaintiff could not show a market value for used article of such description, the intrinsic value or the value to the owner was the correct measure of damages, which would be a reasonable and not fanciful or sentimental value.

4. **Evidence** ⬿142(4) — Evidence held admissible to show reasonable value of lost property.

In an action against a bailee for loss of fur coat and gloves, which articles had been used, and for which no market value could be shown, the plaintiff might show market value of new articles of like character, the time and degree of use of the lost articles, and their quality and percentage of depreciation.

5. **Damages** ⬿105 — Secondhand value not measure of damages for loss of goods.

The secondhand market value for secondhand goods is an inadequate and unjust rule of compensation to the owner for loss of similar goods.

6. **Innkeepers** ⬿11(12) — Question of whether checkroom from which goods was lost was operated for profit held for the jury.

In an action against a hotel keeper for loss of coat and gloves from a checkroom run in conjunction with a dance being held on the premises, *held* not error to submit to the jury the question of whether or not the checkroom was operated for profit.

7. **Innkeepers** ⬿11(3) — Hotel keeper operating checkroom in conjunction with dance held required to exercise reasonable care.

A hotel keeper operating a check room in conjunction with a dance for which admission was charged, and in which guests were impliedly invited to leave wearing apparel, was under duty to exercise reasonable care to protect such apparel.

8. **Innkeepers** ⬿11(12) — Care of coat checked held question for the jury.

Where, in an action against the proprietor of a hotel for loss of coat and gloves from checkroom run in conjunction with a dance, it appeared that the articles had been delivered in the ordinary manner, and that, when the check was presented, defendant failed to return the articles, there was reasonable inference that they had been mistakenly handed to some one else and the question of care in doing so was properly submitted to the jury.

9. **Appeal and error** ⬿1068(4) — Instruction on reasonable cash market value of lost goods held harmless where the issue involved and from which the jury found was the value at time of loss.

In an action against a bailee for loss of goods, instruction submitting the question of what was the reasonable cash market value was harmless where the pleadings and evidence presented the issue as to what the value of the goods was at the time of their loss, and on which issue the jury found, and to which finding the judgment conformed.

Appeal from Dallas County Court; G. A. Harmon, Judge.

Action by Mrs. J. G. Blanchette and husband against the Dallas Hotel Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Murphy W. Townsend and Louis H. Porter, both of Dallas, for appellant.

Burgess, Burgess, Sadler, Christman & Brundidge, of Dallas, for appellees.

HAMILTON, J. This appeal is prosecuted from a judgment for damages alleged to have been occasioned by the loss of wearing apparel checked and left with appellant's employé at the Adolphus Hotel in Dallas. Appellees, in company with others, attended a ball on the night of December 24, 1920, in the junior ballroom of the hotel. This room is on the second floor of the hotel; it occupies an area between the south front of

the hotel and a lobby or entrance hall on its north side, which separates it from the elevator serving the various floors of the building. A checkroom or reserved space in which were deposited hats, overcoats, wraps, etc., was at the time located near the entrance to the ballroom. This was in charge of an employé of the hotel, a young lady who took the hats, overcoats, and wraps of guests as they entered the ballroom, giving identification checks for them. These checks were presented to her by departing guests, and whatever article on deposit which the check identified in the checkroom was thereupon returned.

Charges were made for each person who attended dances, and on this occasion appellant and her husband each was charged an admission fee of 75 cents, which was paid before they entered the ballroom. It was a custom uniformly practiced that guests upon entering the ballroom left their hats, overcoats, wraps, etc., with the employé in charge of the checkroom, taking an identification check for them. It was also an established custom that when the checked garment was returned the person receiving it deposited a tip in a plate provided to receive tips so given. While no fixed charge was required for this service, the plate in which to deposit all tips was conspicuously displayed. The record contains evidence that on such occasions guests were not permitted to take their overcoats and wraps into the ballroom, but were requested to check them in order to assure their safe return.

Appellee and her husband went to the ball of December 24, 1920, about 9:30 p. m., and left about 11:30 p. m. Appellee wore a Kolensky squirrel coat, which her husband checked and left with appellant's employé as they entered the ballroom. In the pocket of the coat were appellee's gloves. Appellant's employé had no information that the gloves were contained in the pocket of the coat. When appellees left the check was presented, but the coat and gloves could not be found. They had disappeared while in the custody of appellant's employé, to whom they were delivered for safe-keeping under the circumstances above set forth.

The case was submitted to a jury upon special issues, which were answered in appellees' favor, and judgment was entered accordingly.

[1] The first proposition presented in appellant's behalf embodies a complaint to the effect that a verdict should have been instructed for appellant on the ground that there was no competent evidence either of the cash market value or of actual value of the lost wearing apparel. In related propositions it is complained that the court committed error in admitting the testimony of dealers in new coats, who had never seen the coat in question; that the court committed error in permitting Mrs. Blanchette to testify as to the reasonable cash market value of the coat after she had testified that she did not know the original value of the coat, and had never bought and sold such coats; that the court committed error in permitting her to testify as to what dealers had stated to be the value of a new coat of the kind which she described to them; and that where there was no testimony that the lost articles had no market value, the question of what was their value to appellee should not have been submitted to the jury.

Evidence in appellees' behalf, which we clearly think was properly admitted, is found in the record which is sufficient to refute the various contentions made by appellant on the issue of value. Mrs. Blanchette testified fully as to the quality of the coat. She also testified that, while she, herself, did not buy the coat, and did not know its original price, she had observed similar coats in the show windows of various dealers in furs in Dallas, and had noted the prices marked thereon. She testified that she had gone into various shops in the city of Dallas, and had examined and priced coats of like character, the prices of which ranged from $600 to $700. The coat was about a year and a half old at the time it was lost. Her evidence was that she had worn it very little during the time she had owned it, and that she had exercised particular care to protect it from deterioration. It was in good condition, according to her testimony, at the time it was lost. Appellee testified that the lost coat was well made, and was composed of exceptionally fine material.

[2] A dealer in furs testified that, while he knew nothing about the value of second-hand apparel of the kind involved in suit, and could not testify as to the original value of the coat lost for the reason that he had never seen it, yet he did testify that a coat of the description of that owned by appellee would be of a market value ranging from $500 to $750, depending upon the particular quality.

It does not appear from the evidence that there are in Dallas any dealers in second-hand wearing apparel of the kind involved in this suit, and we are inclined to think it would be a valid presumption that used clothing of that particular expensive quality could not possess a market value at all. In the nature of things, we think it would be difficult to conceive that a fixed market value for such used apparel could exist. The lost articles, if they possessed any sales value whatever, we think, had no regular market value, but only merely whatever dealers in such goods were willing to pay, if, in fact, there were dealers in such articles at all, which as above stated, is not disclosed in the record of this case.

[3, 4] Such being the state of the record, which does not disclose any market value in

Dallas for such articles, the intrinsic value or the value to appellee, herself, of the coat and gloves is the correct measure of damages. Of course, the meaning of this is that the reasonable value, and not a fanciful, capricious, or sentimental value, of the articles to appellee is the criterion of damages sustained. Such being the rule, all pertinent facts and circumstances were admissible as a basis upon which the jury should determine the amount to be awarded. This pertinent evidence included such facts and circumstances as the market value of new articles of like character, the length of time the lost articles were used, the degree of use to which they were subjected, the quality of the articles, and the percentage of depreciation since the purchase, caused by use or otherwise, and they were properly submitted to the jury to aid them in their consideration and ascertainment of the value of the coat and gloves. Railway Co. v. Wallraven (Tex. Civ. App.) 160 S. W. 116; McCarthy v. Blackwell (Tex. Civ. App.) 162 S. W. 1163; Galveston, etc., Ry. Co. v. Patterson (Tex. Civ. App.) 173 S. W. 273; Ry. Co. v. Rogers, 61 Tex. Civ. App. 603, 129 S. W. 1155; Ry. Co. v. Levy, 45 Tex. Civ. App. 373, 100 S. W. 195; Felker v. Hyman (Tex. Civ. App.), 135 S. W. 1128; Laubaugh v. Ry. Co., 28 Pa. Super. Ct. R. 247; Wells v. Williams (Tex. Civ. App.) 71 S. W. 314

[5] Even if a secondhand market for wearing apparel of this character could be shown to exist in Dallas, still, in the nature of things, no standard of market value could exist for the reason that no two articles of precisely the same kind and in precisely the same condition are to be found, and, furthermore, where a secondhand market for secondhand goods exists, it is so low compared with the actual or intrinsic value of the goods to the owner it would supply only an altogether inadequate and unjust rule of compensation. This the decisions recognize. Fairfax v. Ry. Co., 73 N. Y. 167, 29 Am. Rep. 119; 1 Wigmore on Evidence, p. 716; Ry. Co. v. Miller, 156 Ky. 677, 162 S. W. 76, 50 L. R. A. (N. S.) 819; Ry. Co. v. Colquitt (Tex. Sup.) 9 S. W. 603. The evidence revealed that the gloves were practically new, having been purchased but a very brief time before the cause of action arose, and having been subjected to but very little use. The purchase price was shown to be $7.50.

[6, 7] It is contended that the evidence showed appellant's checkroom was maintained only for the convenience of its guests, and that no charge was made for checking wearing apparel, all amounts paid therefor being mere gifts or tips, and, accordingly, it was error to submit to the jury the question of whether or not the checkroom was operated for profit. Since the evidence showed that a receptacle was provided in a conspicuous place for the receipt of tips, and that the custom prevailed for guests to make deposits of money upon the return of articles left in the checkroom; and, furthermore, since the evidence showed that the hotel company had formerly "farmed out" the privilege of operating checkrooms in this same manner, and had received from a concessionaire pay for the right to operate such checkroom, we think appellant's contention is altogether without merit. No fixed charge, it is true, was demanded, but the method of operation of the checkroom was such as to disclose an implied demand to pay for the service rendered. But, even if it were conceded that the testimony reveals that no specific charge for this particular service was made, yet the fact that all guests were impliedly invited to leave articles of wearing apparel in the care of appellant's employé, and the fact that the checkroom was operated in connection with the dance hall to which an admission fee was charged each guest, we think make it plain that appellant was under the duty to exercise reasonable care to protect articles left with its employé under the circumstances, and that failure to exercise such care would result in liability.

[8] The proposition is advanced that all the evidence showed appellant's checkroom to be a reasonably safe place in which to check wearing apparel, and also showed that it was operated by a competent and experienced employé, and, the evidence disclosing no failure of appellant to exercise due care in the operation and maintenance of it, the court committed error in submitting to the jury the question of whether or not appellant's failure to return appellee's coat and gloves was due to lack of ordinary care on the part of it or its agents. We think it sufficient answer to this position merely to call attention to the fact that the evidence disclosed the coat and gloves to have been delivered at the checkroom and receipted for in the ordinary manner, and that when the check was presented appellant's employé failed to return the articles. The inference that appellant's employé, through mistake had handed out the coat and gloves to a third person is a legitimate one, and whether or not she failed to exercise ordinary care in doing so was a question for the jury to pass upon.

[9] Complaint is made that the court should not have submitted to the jury, as it did, the question of what was the reasonable cash market value of the coat and gloves. Conceding this charge to have been error, yet it was harmless for the reason that the pleadings and the evidence presented the issue as to what the value of the coat and gloves was to appellee at the time of their loss. This issue was submitted to the jury, and was answered by them. The judgment rendered conforms to this particular finding of the jury, and is not based upon the market value found by the jury.

There is no reversible error disclosed in the record of the case, and accordingly the judgment is affirmed.

Affirmed.