**MARYLAND CASUALTY COMPANY, Appellant,**

v.

**Ollie DAVENPORT, Appellee.**

**No. 6855.**

Court of Civil Appeals of Texas.
Amarillo.

April 20, 1959.

Rehearing Denied May 11, 1959.

Simpson, Adkins, Fullingim & Hankins, Amarillo, Richard E. Stokes, Jr., Amarillo, of counsel, for appellant.

R. C. Hamilton, Amarillo, for appellee.

CHAPMAN, Justice.

This is a suit originated by Ollie Davenport, a feme sole, against appellant, Maryland Casualty Company, to recover on a fire insurance policy for the total loss by fire of a residence located at 704 Buchanan in the City of Amarillo and insured by appellant company.

Trial was to a jury. The only question submitted was whether appellee had an insurable interest in the house on the date it was destroyed by fire, to which question the jury answered affirmatively. The term "insurable interest" was defined as follows: "You are instructed that a person has an

'insurable interest' in property if he would derive a pecuniary benefit or advantage from the preservation or continued existence of the property; or if he would suffer a pecuniary loss from the destruction of the property." From said verdict judgment was rendered by the court for $5,000, the amount of the policy, together with interest thereon at the legal rate. Appellant has assigned six points of error which it argues together because all of them go to the claim that appellee had no insurable interest in the property.

It is without contradiction in the record that appellant purchased the property in question from L. H. Sinclair and wife, Myrtle Ida Sinclair, on April 4, 1956, and paid therefor $5,000 by check; that the Sinclairs were living in the house at the time of the sale and gave to appellee their general warranty deed to the property on which it was located; that she took possession of the premises the day following the purchase thereof by having two men move into the house and clean up the place in lieu of paying rent; that on April 9, 1956, she purchased the policy of insurance here in controversy; that two days prior to the fire she rented the property to Buster Scott for $75 per month effective May 1, 1956, but that he never moved in because the residence burned April 29.

On January 27, 1951, the Sinclairs gave a deed of trust to the property in question to J. Roy Smith, trustee, for the benefit of Howard Williams for consideration of "$600.00 to us in hand paid by Howard Williams." On April 6, 1951, Howard Williams assigned the note and deed of trust lien to E. S. Bourassa, which was subsequently foreclosed by Cleo Clayton, Jr., substitute trustee, and a trustee's deed given to Bourassa on February 22, 1952. On April 21, 1954, Bourassa conveyed the property to Carmen Bourassa. All the instruments just described were on record at the time of the purchase of the property by appellee from the Sinclairs and at the time the policy of insurance was issued on the house. The question then, with which we are presented, is whether appellee had such insurable interest as to entitle her to recover on the policy of insurance issued by appellant in consideration of a $128.70 premium paid therefor by appellee.

It has been textually stated in Appleman's Insurance Law and Practice, Volume 4, page 21, section 2123 that:

"The insured may recover under a fire policy when he has an insurable interest for losses which he has sustained not exceeding the amount for which he is insured. To have such insurable interest, he must act in good faith and show such relation to the property as would give some interest in its preservation. It must be an interest that the peril insured against would cause damage thereto.

"The usual rule customarily followed is that an insurable interest exists when the insured derives pecuniary benefit or advantage by the preservation or continued existence of the property or would sustain pecuniary loss from its destruction. Reasonable expectation of benefit from preservation of the property is thus sufficient.

"A right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient. It does not matter in what way such benefit arises or the reason loss would occur thereby, limited presumably by dictates of public policy—if such benefit would be lost by destruction of the subject matter, that interest is insurable.

"Thus, it may safely be said that a fee title is clearly not required of the insured, nor even a direct property interest, the test of exposure to financial loss being all important."

The Fort Worth Court of Civil Appeals in the very late case of Crutchfield v. St. Paul Fire & Marine Insurance Co., 306 S.W.2d 948, 951, has said:

"There was a question of fact raised as to whether plaintiff Crutchfield held an insurable interest in the property since he held possession of it under a claim of right and there was evidence that he had paid an amount down on a purchase thereof and had made valuable improvements thereon under circumstances and to the extent that he derived pecuniary benefit or advantage by the preservation or continued existence of the property and would suffer pecuniary loss from its destruction."

In the case of American Ins. Co. v. Edwards, Tex.Civ.App., 78 S.W.2d 1020, 1022, Edwards had taken a judgment in County Court against unincorporated church property and the church by application for injunction in District Court sought to enjoin the Sheriff's sale. The injunction was denied, the Sheriff's sale was conducted, Edwards bought it and then insured the property. The church burned and the insurer defended on the grounds that Edwards had no insurable interest because the church was not a legal entity of law, could not be sued in the church name and could not be held in a judgment for a personal debt. The Austin Court, speaking through the late Chief Justice McClendon, said:

"There is much force in appellee's contentions; but we find it unnecessary to decide the legal questions presented, since a mere statement of them shows, we think, an insurable interest in appellant under what we regard a proper application of well-recognized general principles. We do not understand the rule to be that where the insurable interest relied upon is title in the beneficiary, such title must be perfect and indefeasible against all the world. * * The specific question presented in the instant case may thus be stated: Has one, who has purchased in good faith, a title which he believes to be good, the validity of which depends upon the proper determination of intricate questions of law, upon which able lawyers might differ, an interest in the property which he can protect by insurance? We think this question should be answered in the affirmative; and where the policy has been written with knowledge of the condition of the title, the insurer will not be permitted to invoke the processes of the court to determine the ultimate validity of the title in order to escape a liability which it has voluntarily assumed * * *."

The Dallas Court of Civil Appeals in the early case of Rolater v. Rolater, 198 S.W. 391, at page 393, has said, " * * * any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction, and the mere equitable title or other qualified property in the thing insured, though not the fee, may be protected by insurance in case the insured might suffer loss by the destruction of the subject-matter of the insurance."

There is no question whatever from the record before us that the purchase of the property by Ollie Davenport was in complete good faith, as was the purchase of the insurance policy to protect her investment. It is without contradiction that she had the place rented beginning May 1, 1956, at $75 per month. From such rent she certainly would have derived a benefit from the continued existence of the property and suffered loss from its destruction. Therefore, from the record before us and the authorities above cited, it is our opinion that appellee showed such insurable interest in the property as to entitle her to have a jury pass on the question the court submitted. The jury having found in her favor we do not feel we would be justified in setting aside the judgment the court rendered from the jury findings.

Though we do not consider it is necessary in this proceeding for us to find that the deed of trust was an effort on the part of the Sinclairs to mortgage a homestead and that for such reason Carmen Bourassa's title was not good, we do think

the record so shows. Mrs. Sinclair's testimony shows she had been married to L. H. Sinclair about 12 years; that she had lived in the house that burned from 1950 until she sold it to Mrs. Davenport; that she was married during all that time; that she claimed it as her home and never at any time owned any other home. It is true the record indicates the Sinclairs declared Buna Vista, in Hutchinson County, as their homestead but such declaration would not preclude Mrs. Sinclair, under the facts of this case, from asserting a claim of homestead to the Buchanan Street property. Particularly is this true when the record shows her mother owned the Buna Vista property and she and her husband had no interest whatever in it. 22 T.J., Sections 124, 125 and 126, pp. 179, 180 and cases there cited.

Judgment of the trial court is affirmed.