STANDARD NATIONAL INSURANCE COMPANY, Appellant;

v.

Mrs. Rosie M. BAYLESS et vir, Appellees.

FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., Appellant,

v.

Mrs. Rosie M. BAYLESS et vir, Appellees.

Nos. 6361, 6362.

Court of Civil Appeals of Texas.

Beaumont.

July 21, 1960.

Rehearing Denied Sept. 14, 1960.

Painter & Painter, Houston, for appellant.

Helm, Jones, McDermont & Pletcher, Houston, McClain & Harrell, Conroe, for appellee.

McNEILL, Justice.

These actions were upon fire insurance policies instituted simultaneously in the district court of Montgomery County by the insureds, appellees Rosie M. Bayless and husband, S. R. Bayless, against appellant Standard National Insurance Company in one instance and in the other against appellant Fidelity and Guaranty Insurance Underwriters, Inc. The petitions in the action were identical, except for the names of the companies, and sought recovery in each suit for $7,000 under a certain fire insurance policy, $4,000 on the house and $3,000 on the contents thereof, making a total in the two suits of $8,000 on the house and $6,000 on the contents. The cases were consolidated for trial only.

In each suit appellees alleged that they held a fire insurance policy from the company for $4,000 on the house and $3,000 on the contents, which was in force and effect on July 15, 1957, at which time the house and contents were destroyed by fire and were total losses. They further alleged an insurable interest therein. Each appellant answered and filed a cross action for foreclosure of its mortgage interest held by it as hereinafter described.

Judgment upon trial before the court was for the appellees on said policies for the full amount on the house, less the mortgage as set out in the policies, and for the contents in the amount of $2,807.50 on each $3,000 policy. The next succeeding 4 paragraphs give the background of the controversy.

Appellee S. R. Bayless, while married to another Mrs. Bayless obtained a quitclaim deed dated June 29, 1954 to a tract of 20 acres of land out of the N.E. corner of the N. ¼ of the Milton Robertson ,Survey in said county. This quitclaim initially recited a cash consideration of $10 and was in ordinary form quitclaiming to Bayless, his heirs and assigns all of grantors' "right, title and interest." However, following the description of the land and before the habendum appeared the following para-

graph: "The moving consideration for this conveyance is that Grantee, by the acceptance hereof, agrees to reside as our tenant upon the North One-fourth (¼) Milton Robertson Survey tract of land mentioned above for and during a period of Five (5) years from and after June 29, 1954, otherwise, this conveyance to become null and void."

When the deed was made there was a 5-room frame house on the 20 acres and Bayless and first wife took possession of the premises. Divorce was granted Bayless from this first wife on September 12, 1955, and the 20 acres was awarded him as his separate property. Six days previously the 5-room house thereon burned down and Bayless, about October 29, 1955, bought a frame house in Conroe and had it moved 18 miles to the 20 acre tract where it was remodeled, rewired and new plumbing installed so that it amounted to a house 48 feet by 48 feet containing 8 rooms and a large front porch. Bayless testified that the purchase of the house, expense of moving it and remodeling, etc., cost him about $10,000. In order to finance this, on October 29, 1955, he executed a note for $3,500 secured by a M & M lien on the house and 20 acres to a contractor who assigned them to Conroe Federal Savings & Loan Ass'n. The note was then extended so that it was payable in monthly installments. As part of the transaction the grantors in the above mentioned quitclaim deed executed a subordination agreement to the interests of the holder of said note and M & M lien. This agreement recited the execution of the quitclaim deed and quoted the above tenancy paragraph thereof. The agreement then provided that the grantors "do hereby agree that said covenant and condition in said deed—is hereby made subordinate, subject and inferior" to the M & M lien and the rights of the holder thereof and in event of foreclosure, the purchaser "shall take title thereto without the same being encumbered by said condition or covenant, but on the contrary said conveyance shall be absolute."

Appellees S. R. and Rosie Bayless became man and wife November 2, 1955. This Mrs. Bayless had been married previously, her first husband having died intestate in 1951, leaving several children of the marriage, a home place of 12.3 acres with residence and household furnishings therein.

On August 29, 1956 appellees opened a beer tavern in their home, turning over for this purpose the living and dining rooms, a bedroom or two and a bath. They purchased for this business two large electric ice boxes and other paraphernalia.

After their agent had checked the above property and premises, appellants issued the policies sued upon on September 25, 1956 for a 5-year term. As stated above, a fire occurred about 3 or 4 o'clock a. m., July 15, 1957, completely destroying the house and contents. While appellees had two teenage daughters living with them, on this night they happened to be visiting friends or relatives, and only appellees were in the house. Pop Bolen, an old man who worked upon the premises for appellees, spent the night in his accustomed place in a structure to the rear of the house.

Appellees made proof of loss under the policies and having asked appellants' agent in September, 1957 when they would pay the losses were told appellants denied liability under the policies. Appellants purchased the balance of $3,291.12 then owing to the Savings and Loan Association on the Bayless note and it, together with the M & M lien, were assigned to them. The accompanying loan documents, including the insurance policies involved were also delivered to appellants. Upon being sued by appellees, appellants' cross action sought establishment of the balance owing on the note and foreclosure of the M & M lien. The trial court filed extensive findings of fact and found that appellants were entitled to recover the balance on the note offsetting this sum against the amount awarded appellees, and rendered judgment for the difference in appellees' favor.

■ Appellants first assail that part of the judgment allowing recovery for loss of the building, contending that title to the property under the above quoted provision of the quitclaim deed had not vested in appellees at the issuance of the policies nor at the time of loss, and therefore no insurable interest was shown. Under this contention appellants urge that since the quoted provision made Bayless a tenant on the premises, both at the date of the policies and at time of the loss, the provision had the effect of suspending the passage to Bayless of any title to the 20 acres until after the 5-year period of tenancy required was concluded, the paragraph created a condition precedent to the vesting of title. We are inclined to agree to this proposition for two reasons. First, because the sole consideration for the deed was performance of the condition. In such instances conditions are usually construed as precedent. Manton v. City of San Antonio, Tex.Civ. App., 207 S.W. 951; Hall v. Barrett, Tex. Civ.App., 126 S.W.2d 1045, 1047; 19 Am. Jur. 529. Second, because the immediate vesting of all grantors' interest in the 20 acres described in the deed is inconsistent with the relationship of landlord and tenant immediately springing from the quoted paragraph of this deed.

■ While arguing the provision is a condition subsequent, appellees also assert that they had an insurable interest in the building if only the relationship of landlord and tenant existed by virtue of the quoted provision of the deed. Although no one under the tenancy agreement appears to have been obligated to replace the original house destroyed by fire, replacing a building thereon would no doubt be in appellee S. R. Bayless' interest and aid him to use and occupy the premises as required under the quoted provision, so that he might mature his title to the 20 acres. No one else signed the note with him to the Savings and Loan Association. And the subordination agreement executed by the grantors in the deed affirmed Bayless' right to execute the M & M lien to secure the replacement of the original house on the premises. Under the circumstances appellee S. R. Bayless had, as tenant, an insurable interest in the house. Springfield Fire & Marine Ins. Co. v. Republic Ins. Co., Tex.Civ.App., 262 S.W. 814; Insurance Company of N. A. v. O'Bannon, 109 Tex. 281, 206 S.W. 814, 1 A.L.R. 1407; Maryland Cas. Co. v. Davenport, Tex.Civ. App., 323 S.W.2d 615; 24–B Tex.Jur. 227.

■ Appellees also having occupied the premises as their homestead, they had insurable interests therein. East Texas Fire Ins. Co. v. Crawford, Tex.Com.App., 16 S.W. 1068; State & County Mut. Fire Ins. Co. v. Kinner, Tex., 319 S.W.2d 297. While the policies provided that no recovery could be had thereon beyond the insureds' interest the record does not show that the amount of insurance provided therein exceeded appellees' interest. Newsome v. St. Paul Mercury Ins. Co., Tex.Civ.App., 331 S.W.2d 497.

■ Appellants next contend that recovery may not be allowed for the contents or personal property for the reason that the children of Mrs. Bayless by her first husband inherited a half interest therein from their father. We have perused the entire statement of facts and have concluded that the trial court's findings to the effect that the contents "were owned by one or both plaintiffs and were used by them in the maintenance of their domestic relation and home" was justified. It should be mentioned in this connection that appellees requested, and the trial court found that they were entitled, to have the recovery on the policies awarded to them in both their names. While the testimony of Mrs. Bayless was at times equivocal, her testimony with reference to the many items of contents, their various dates of purchase, prices paid, and condition, covered by far the greater part of the first 360 pages of the record, and it is understandable that discrepancies could exist in the multitudinous detail. If, however, there were some specific items in which Mrs. Bayless' chil-

dren had an interest, they were of an inconsequential nature, not specifically pointed out by appellants, and it was not shown that that part of the judgment for the contents exceeded the interests owned therein by appellees. Appellants therefore may not complain. Newsome v. St. Paul Mercury Ins. Co. supra. It has also been held where household furniture belonging to the separate estate of wife is used in the home in furtherance of the domestic relation, the husband has an insurable interest therein. Georgia Home Ins. Co. v. Brady, Tex.Civ. App., 41 S.W. 513, 516; Commonwealth Ins. Co. of N. Y. v. Lacy, Tex.Civ.App., 214 S.W.2d 899.

■■ Appellants next complain of the allowance of interest on the judgment from October 1, 1957. The record shows and the trial court, in effect, found that appellants' agent advised appellees that the companies denied liability sometime in September, 1957. Interest from October 1, 1957 was properly allowed. Delaware Underwriters v. Brock, 109 Tex. 425, 211 S.W. 779. The fact that appellees did not recover the full amount of the policy limits on the contents does not militate against the rule that interest begins from date of denial of liability. Central Federal Fire Ins. Co. v. Lewis, Tex.Com.App., 44 S.W.2d 936; 6 Appleman, Insurance, Sec. 4024, p. 483; St. Paul Fire & M. Ins. Co. v. Garza County W. & M. Ass'n, 5 Cir., 93 F.2d 590.

Complaint is made in appellants' 4th point that the court erred in admitting into evidence photostatic copies of the insurance policies sued upon over objection that the photostats were not the best evidence. The facts show appellees' attorney, Mr. Albert P. Jones of Houston, wrote a letter to appellants' attorney, Mr. J. H. Painter, Jr., also of Houston, which the latter received Thursday, September 10th before the case went to trial on the following Monday, the 14th, demanding production of said policies or secondary evidence thereof would be offered. Mr. Painter wrote the home offices of his companies for the pol-

icies on the date appellees' letter was received. The home office of one of the companies was in Atlanta, Georgia, and that of the other was in Baltimore, Maryland. On the 6th day after appellants received appellees' letter and on the second day of the trial demand of appellants was made for the policies and upon being advised by counsel for appellants that he did not have them available, appellees proved by one of their attorneys, Mr. Cam Harrell of Conroe, that he had during the early stages of the controversy gotten permission of the Conroe Savings and Loan Association, which then held the original policies as lienholder, to make photostatic copies thereof, which was granted. He testified he had had made these copies from the originals and he proof read them against the originals and then re-delivered the originals to the Association. In the argument that ensued over admission of the secondary evidence, counsel for appellants contended appellees failed to use due diligence to obtain the originals. We quote him, in part: "The case went to trial Monday of this week. The letter was received in our office on Friday and we have a reply to counsel saying we would be unable to secure them by today, that they were not in my care and custody at that time, and that the case had been heard here on Tuesday (8th) for a Motion for Continuance on our part, and in view of the trial date, I could not hope to contact these parties with headquarters in Baltimore and one in Atlanta, and I couldn't get them back here. In view of that fact, I think the photostats are not the best evidence, and we object to the introduction of them.".

■ We think, however, the court properly admitted the photostats. As stated earlier in this opinion, when appellants purchased the lien on the insured premises, all title papers, including the insurance policies, were delivered to appellants' counsel. We gather from his argument, above quoted, that he sent the policies on to the respective home offices of the companies, or, at least, they were there at the time of the

trial. Two propositions support the trial court's ruling. First, whether due diligence of appellees' counsel was shown as a predicate for offer of the photostats is one left to the discretion of the trial court. We hold that he did not abuse this discretion, and the policies being out of state, secondary proof thereof was admissible. Vol. 2 McCormick & Ray, sec. 1570, pp. 421–424, sec. 1575, p. 430. Second, appellees being the insured therein had a property right in said policies, and having instituted suit upon them, the very nature of the suit puts the opposite party who holds the instruments upon notice to produce them. We quote from Sec. 1570, p. 422, McCormick & Ray:

"Frequently an explicit notice to produce documents is included in the pleadings themselves and this is effective. Moreover, the mere nature of the suit itself has often been held to dispense with explicit notice, where the action is based on the instrument or the allegations are such as to charge the adversary with possession of the documents and to apprise him of the desire that they be forthcoming at the trial, and this principle should be liberally applied."

Many Texas cases are listed in the footnotes sustaining this proposition.

Appellants' 5th point asserts that the court erred in rendering judgment for the value of personal property because there was no evidence to support such and same was against the great weight and preponderance of the evidence. As adverted to above, there were many pages of testimony as to the articles involved. The list included household furniture, books, sewing machines, vacuum cleaner, men's, women's and children's wearing apparel, kitchen utensils, bric-a-brac, shotguns, watches, home canned fruits and vegetables, chinaware and silverware, venetian blinds and curtains and pictures. In addition, items in the beer business were listed. Appellants have not pointed out in this voluminous array any specific articles which they think did not have supporting proof and they seem to take the position, under the general language of the point, either that value of none of the articles was properly shown or that it is this court's burden to winnow any items improperly proved up. The latter is not our burden under the point urged. Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 941. But we will examine the type of proof as to the different classes of articles. Having read the testimony of the witnesses as to value of the contents, there appears to have been no complaint as to values of the stock of beer and drinks and as to values put on the electric ice boxes used in the beer tavern. The proof made of the household furniture followed this pattern: Appellee Mrs. Bayless was asked when she had bought the article, describing it briefly, whether new or secondhand, what was price paid, and what condition it was in; if involving moving parts, whether repairs had been made, and if functioned properly. The witness, Lester Shepard, testified he was a furniture dealer at Conroe and would take trade-ins and occasionally took in repossessed furniture and appliances and resold these items. Each item of furniture testified to by Mrs. Bayless was then described to him giving make, age, cost, and condition and he would estimate its market value in term of depreciation from cost paid. He stated he had never seen any of the furniture or items involved and his opinion of value was necessarily a general one or "roughly speaking". Objections were reserved to Mrs. Bayless' testimony of values for the reason that "price" of the article was not proper proof of value and to Mr. Shepard's testimony that the descriptions were too vague and indefinite, and the original price could not be relied upon for one business might sell at one price and another business at another. The proof made was the best obtainable in the circumstances and the trial court from the facts set forth has found the value of the furniture and we think properly so. The test under the circumstances

was what was the value of the items to the insured? The furniture, when looked at, disconnected from the premises and possession involved, to be sure, was secondhand but it had a more substantial value, as it was situated at the time of the fire, to appellees. Chief Justice Willie long ago in International & G. N. Ry. Co. v. Nicholson, 61 Tex. 550, stated the applicable test:

"*  *  * As compensation for the actual loss is the fundamental principle upon which this measure of damages rest, it would seem that the value of such goods to their owner would furnish the proper rule upon which he should recover. Not any fanciful price that he might for special reasons place upon them, nor, on the other hand, the amount for which he could sell them to others, but the actual loss in money he would sustain by being deprived of articles so specially adapted to the use of himself and his family."

This rule, applying alike to household furniture and wearing apparel, was followed in Pecos & N. T. Ry. Co. v. Grundy, Tex.Civ. App., 171 S.W. 318; Wutke v. Yolton, 71 S.W.2d 549 (by this court); Williamson v. Askew, Tex.Civ.App., 328 S.W.2d 473 and numerous other cases.

▆ On proof of value of wearing apparel, bed clothes, linens, towels, etc., Mrs. Bayless stated she had been a housewife for a long number of years and had considerable experience in shopping for the family. She knew the cost of such articles, extent of their use, whether worn or out-of-date and their condition at time of loss. The evidence was admissible to determine actual value to the owners. Gabbert v. Miller, Tex.Civ.App., 258 S.W.2d 383; Fidelity & Guaranty Fire Corp. v. Ormand, Tex. Civ.App., 62 S.W.2d 675; Dallas Hotel Co. v. Blanchette, Tex.Civ.App., 246 S.W. 1065.

▆ Appellants' final point asserts that the trial court erred in failing to find that the fire was caused by appellees. Except for short quotation from 21 Appleman,

p. 112 which we exclude, appellants' entire argument under this point follows:

"The evidence shows this man was overdrawn at the Bank on the day of the fire. That Mrs. Bayless' hospital and doctors' bills incurred before the fire had not been paid at the time of trial of this case some two years later. In two years he had had or been closely associated with six insured fires. This fire occurred in the early morning hours, deep in the piney woods without explanation. The children were not at home. Three or four truck loads of furniture had been moved a week before the fire. Plaintiffs although given four or five opportunities never testified to grabbing any clothes and getting out at that early hour but merely to getting out. Bayless's first wife testified he watched a truck burn and wanted her to set fire to a house. His own son testified he was not alarmed when the house formerly at this location burned and he was in the field.

"Certainly Plaintiffs below stood to profit by the fire and all circumstances pointed to the need. Plaintiffs' testimony is incredible and the judgment is without support of any credible testimony and against the great weight and preponderance of the evidence."

Appellees testified they did not know the cause of the fire. The overdraft mentioned was $44.13. The present Mrs. Bayless, who on the date of the fire was on crutches from being hospitalized for a foot injury, testified she was paying from time to time on the medical bills mentioned. The 3 or 4 pick-up truck loads of furniture removed a week before the fire belonged to the newly married son of Mrs. Rosie Bayless for the purpose of setting up housekeeping. The evidence did reflect singular circumstances in connection with a truck owned by Bayless that had burned up a couple of years before, and with the burning of the house that had been re-

placed by the one presently involved. But the material evidence on those two fires came from appellants' witness, Mrs. Pearl Ashmore, the former Mrs. Bayless from whom Bayless obtained divorce in September, 1955. It is worthy of note that this divorce judgment awarded custody of the children to Bayless. Mrs. Ashmore did not state Bayless ever set any fire nor did she claim Bayless ever told her he did. Her 15 year old son Jim Bayless also testified for appellants but his testimony was of no consequence. However, on cross-examination of Mrs. Ashmore the following took place:

"Q. Have you ever talked to your son about this case? A. Not much, a little bit.

"Q. Have you ever told your son that you didn't want to see Mr. Bayless get anything out of this case? You told him that, didn't you? That's the truth, isn't it? A. I don't remember whether I have said anything like that or not.

"Q. You could have said it, couldn't you? A. Yes.

"Q. And if he says you did it, that's true, isn't it? A. If he says so, I guess so.

"Q. You know in your own mind that you have expressed that thought to him that you didn't want to see Mr. Bayless get anything out of this lawsuit? That's true, isn't it, and you know that it is a fact? A. I probably have."

The court saw and heard the witnesses and allowed full range in their examination of any and all inculpatory factors bearing upon the charge of arson. He has found that appellees would not and did not profit from the fire and that they did not cause nor bring about the fire. The evidence supports his findings, and we are bound thereby. See Continental Ins. Co. v. Johnson, Tex.Civ.App., 216 S.W.2d 635.

The judgment is affirmed.