**F. M. REYNOLDS, et ux. (Reynolds, Earlene), Plaintiffs–Appellees,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellant.**

No. 79–1408.

United States Court of Appeals, Fifth Circuit.

Nov. 6, 1980.

Opinion on Rehearing Jan. 12, 1981. See 633 F.2d 1208.

Gordon R. Pate, Beaumont, Tex., for defendant–appellant.

Jas. W. Mehaffy, Jr., Beaumont, Tex., for plaintiffs–appellees.

Before GOLDBERG, GARZA and REAVLEY, Circuit Judges.

GOLDBERG, Circuit Judge:

As the ashes smoldered, silently evidencing the prior existence of a home in Vidor, Texas, a jury in nearby Beaumont found that plaintiffs F. M. and Earlene Reynolds were entitled to recover the proceeds of a fire insurance policy issued by defendant, Allstate Insurance Company, on the recently–cindered residence. Dissatisfied · with the dousing it received at the trial level, Allstate now heatedly contests the finding that the Reynolds had an insurable interest in the former structure, by crying that something was ablaze within the records of the title office. We, the appellate firemen, must respond to all calls and have approached the question of title with caution, combing both the record of the proceedings below and the mortgage laws of Texas for a hidden spark. Finding appellant Allstate's pleas for help to be nothing more than a false alarm, we affirm the judgment below awarding recovery under the policy. We do, however, consider the award of $3500 attorney's fees to have been an unsupported burnt offering; therefore, we vacate that award and remand the case solely for a determination of reasonable attorney's fees.

I. *From Bark to Ash*

In 1964, plaintiffs–appellees F. M. and Earlene Reynolds purchased an undeveloped lot in Vidor, Texas. Six months later, they contracted with W. L. Looney to build a house on the lot, and executed a Mechanics and Materialman's Lien and Note in Looney's favor to secure payment for the construction. As further security for their indebtedness to Looney, the Reynolds simultaneously executed a Deed of Trust, conveying the property to Shon P. Hudson as trustee. No payments were made on the house between 1965–1969. On November 21, 1969, Looney, the mortgagee–debt holder, appointed D. Woodrow Wilson as substitute trustee, and shortly thereafter, forced the resignation of the original trustee, Hudson. Looney instructed Wilson to institute foreclosure proceedings, and in January, 1970, Wilson conveyed the property to Looney pursuant to a trustee's sale.

Following the foreclosure,[1] the Reynolds began to make payments to Looney and

---

1. At trial, the Reynolds testified that they had no notice and were, in fact, unaware of the foreclosure. Looney maintained that a registered letter had been sent to the couple and that they clearly understood its import.

continued to live in the house.[2] In February, 1975, the couple took out a fire insurance policy on the house with defendant Allstate Insurance Company. Four months later, that which had been dust returned to dust.[3] Upon Allstate's refusal to pay the Reynolds' claim under the policy,[4] the couple instituted this action.

## II. *What's In A Title?*

The only substantive issue raised on appeal is whether the Reynolds had an insurable interest in the destroyed property. Both parties agree that absent an "insurable interest," the Reynolds were not entitled to recover under the policy. Similarly, there is no dispute that the only "insurable interest" which could be found to exist on the facts of this case was the Reynolds' claim as mortgagors, the very interest on which Looney attempted to foreclose in 1970. Therefore, in order to prove the existence of an "insurable interest" entitling them to recover on the fire policy, the Reynolds had to attack, and prove the invalidity of, the foreclosure proceedings. The district court permitted plaintiffs to introduce evidence indicating that Looney's attempted foreclosure was invalid and, based on special interrogatories answered by the jury, the court found the foreclosure to be void. Appellant now contests the finding that the foreclosure proceeding was invalid. Moreover, Allstate argues that the plaintiffs should not have been permitted to introduce evidence attacking Looney's record title. Finding no error on either of these points in the proceeding below, we affirm the finding that, at the time of the pyrogenic destruction, the Reynolds had an insurable interest in the property covered by the policy, entitling them to recovery thereunder.

## A. *A Trustee By Any Other Name . . .*

In the present case, the deed of trust conveying this soon–to–be broiled plat contained a boilerplate clause providing for the naming of a substitute trustee "in case of absence, death, inability, refusal or failure of the Trustee" to act. It is well–settled in Texas law that Wilson could not have been validly appointed as a substitute trustee absent the occurrence of one of these contingencies specified in the deed. *Bracken v. Bounds*, 96 Tex. 200, 71 S.W. 547, 549 (1903); *Clark v. Richardson*, 247 S.W. 347, 348 (Tex.Civ.App.1922). Furthermore, it is equally clear under Texas law that, in the event Wilson was not validly appointed as substitute trustee, his actions in foreclosing on the Reynolds' mortgage and selling the property to Looney were void. *Johnson v. Koenig*, 353 S.W.2d 478, 484 (Tex.Civ.App.1962); *Home Fire & Marine Ins. Co. v. Swanner*, 57 S.W.2d 1130, 1131 (Tex.Civ.App.1933); *Austin v. Carter*, 296 S.W. 649, 651 (Tex.Civ.App.1927); *Clark v. Richardson, supra*, 247 S.W. at 348; *Wilson v. Armstrong*, 236 S.W. 755, 757 (Tex.Civ.App.1922); *Rawlings v. Lewis*, 191 S.W. 784, 786 (Tex.Civ.App.1917); *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex.Com.App. 1932). Therefore, the validity of Looney's foreclosure turns on whether he strictly complied with the terms of the deed of trust in naming Wilson as substitute trustee.

There was some ambiguity in Looney's testimony at trial as to the circumstances

---

2. Both the nature of the payments and the status of the Reynolds' residency were disputed at trial. Looney argued that he had given the couple permission to lease the house and, accordingly, that the payments in question represented rent. The Reynolds claimed that the payments were installments on the Note executed in 1965, and that their continued residency evidenced their uninterrupted ownership of the property.

3. The Reynolds were not living in the house at the time it was destroyed, having moved into a larger residence. The new occupants, the Arnolds, began to make rental payments to the Reynolds but were soon instructed by Looney to direct such payments to him. The Reynolds testified at trial that they were contesting Looney's actions in redirecting these payments at the time the question was mooted by the destruction of the house.

4. Allstate returned the premiums which had been paid on the fire policy.

under which he substituted Wilson for the original trustee Hudson. Fortunately for us, the issue whether Looney strictly complied with the terms of the deed of trust in making this substitution was addressed, at trial, by the legal world's supreme source of wisdom on issues whose resolution turns on the meaning of ambiguous testimony–the consensus of peers. For whilst ambiguity may defy truth,[5] it can not–in halls of justice–defeat agreement. On special interrogatory, the jury found that Looney failed to request the original trustee to act, and, in fact, prompted his resignation. Additionally, the sagacious collectivity concluded that the trustee substitution was undertaken for "the convenience and benefit" of Looney. We cannot say that there was insufficient evidence to support the jury's finding that the substitute trustee's appointment was unauthorized by the deed of trust. Therefore, we find that if the district court was correct in allowing the Reynolds to attack the validity of the foreclosure, the court was also correct in concluding that the attempted foreclosure was void, and that it failed to extinguish the Reynolds' insurable interest in the residence.

### B. *A Collateral Attack By Any Other Name . . .*

■ Appellant Allstate also argues that the district court should not have allowed the Reynolds' to challenge the validity of the foreclosure, or of Looney's record title. Allstate contends that such "collateral attacks" on title are not permitted in suits–such as the present action for recovery under an insurance policy–where the record titleholder is not named as a party. Collateral attacks, it maintains, can only be attempted in "trespass to try title" actions. We think appellant misconstrues both the form of the Reynolds' argument and the substance of Texas law.

In their complaint, the Reynolds noted that the property insured by appellant had been totally destroyed, that all premiums due under the policy had been paid, and that Allstate had refused to make payments as required by the insurance contract. There were no allegations regarding title, nor were any required in order for the plaintiffs to state a claim for breach of contract. In its answer, Allstate raised the affirmative defense that the plaintiffs had no insurable interest in the destroyed property and were therefore not entitled to recover under the policy. At trial, Allstate was faced with proving, and, in turn, the Reynolds were required to rebut, the "absence of an insurable interest" defense. Allstate introduced evidence of Looney's foreclosure, while the Reynolds strove to prove its invalidity. In so doing, both sides were litigating an operative fact in the insurance suit–the existence of an insurable interest. The issue of title to the property was never contested: record title is not affected by this litigation.[6] Admittedly, on the facts of this case, the dispositive issue in the determination of both the existence of an "insurable interest" (in a contract action) and the situs of title (in a property suit) would be the validity of the foreclosure. However, the existence of a common dispositive issue cannot convert "proof of an insurable interest" into a "collateral attack on title." Moreover, it would be grossly inequitable to allow Allstate to introduce Looney's record title to prove that the Reynolds lacked an insurable interest, while simultaneously estopping plaintiffs from introducing evidence tending to prove the existence of such an interest. Therefore, we find that the district court was correct in allowing the Reynolds to attack the validity of Looney's foreclosure.

■ Lest we be accused of acrobatic semanticizing, or worse, of collapsing into semantic aphasia, we note additionally that contrary to appellant's contention, Texas law does permit collateral attacks on title in actions other than "trespass to try title"

---

**5.** *See* W. Shakespeare, *Macbeth*, Act V, Scene viii (The Bard, [through Macbeth] reflects on the duplicity of ambiguity as represented by the three witches).

**6.** Moreover, under Texas law of collateral estoppel and res judicata, Looney's interests can not be effected by this case. *See* page 1115 *infra.*

suits. *See, e. g., Home Fire & Marine Ins. Co. v. Swanner*, 57 S.W.2d 1130 (Tex.Civ. App.1933) (by implication) (insurance company can attack title, in contesting mortgagee's "sole ownership" of property, by proving attempted foreclosure by mortgagee to have been void due to unauthorized appointment of substitute trustee); *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex.Com.App. 1932) (by implication) (junior lienholders can challenge title). In fact, such attacks have been ruled permissible in situations similar to the one presented by the facts of this case. *See, e. g., Maryland Casualty Co. v. Davenport*, 323 S.W.2d 615, 617 (Tex.Civ. App.1959) (dictum) (in action for recovery under a fire insurance policy, record title challenged in attempt to prove insurable interest). The distinction between those situations in which collateral attacks can be launched and those in which they are prohibited turns on whether the alleged defect is one which would actually serve to void the title, or, alternatively, would merely make the title voidable. *E. g., Ford v. Emerich*, 343 S.W.2d 527, 531 (Tex.Civ.App. 1961); *Smith v. Albright*, 279 S.W. 852, 853 (Tex.Civ.App.1926), aff'd 288 S.W. 178 (Tex. Com.App.1926). Void titles can be collaterally attacked; voidable titles can only be challenged in direct actions against the record titleholder to have his title declared invalid.

Although courts rarely articulate the reasons for this distinction, the justification becomes apparent under scrutiny. A voidable title remains a valid one until such time as the party, in whom the power of nullification exists, moves to have the title invalidated. Therefore, in a collateral suit, proof of a defect which would serve to make a title voidable would not operate to invalidate the recorded title for purposes of the collateral attack. To achieve this goal, it would be necessary for the would–be collateral attacker in the first suit to bring a second action: a suit against the record titleholder to have the voidable title de-

clared void. However, a void title is a complete nullity; proof of a defect which actually voids a title would be sufficient, without further court action, to establish the invalidity of the record title for purposes of the collateral attack. Having earlier concluded that the defect in Looney's foreclosure rendered his title void, we find that even if the Reynolds' challenge in this case were viewed as a "collateral attack on title," such an attack was permissible.

Moreover, in allowing the Reynolds to collaterally attack Looney's record title in this action and, in fact, to have such title declared void, we have no fear of unfairly prejudicing the interests of Looney. Looney's absence from the case renders the doctrine of res judicata inapplicable. Moreover, under Texas law of collateral estoppel, the lack of privity between Looney and Allstate insures that our pronouncement–of the invalidity of Looney's title–can have no effect in any future action between the couple and Looney contesting title to the property. *See, e. g., Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361 (Tex.1971).[7]

Appellant's reliance on the case of *Scott v. Hewitt*[8] is misplaced. In *Scott*, the Texas Supreme Court prohibited an attack on a sale of property made under a deed of trust in a suit for forcible detainer. However, the prohibition was caused not by the indirectness of the attack, but rather, by the nature of an action for forcible detainer. As the judge noted in *Scott*:

> The Legislature has expressly provided by forcible entry and detainer proceedings a summary, speedy, and inexpensive remedy for the determination of who is entitled to the possession of premises, without resorting to an action upon the title. This action allowed by law is not exclusive, but cumulative, of any other remedy that a party may have in the court of this state.

Since to have allowed litigation over the validity of the recorded title would have

---

**7.** In addition, in those cases in which the rights of the unrepresented third person could be prejudiced by the allowance of a collateral attack, the proper remedy would not seem to be the disallowance of the attack, but rather, the

naming of the third person as an indispensable party, pursuant to Rule 19 of the Federal Rules of Civil Procedure.

**8.** 127 Tex. 31, 90 S.W.2d 816 (Tex.1936).

been to expressly undermine the Legislature's goal of providing a "summary, speedy and inexpensive" remedy in landlord–tenant disputes, the defendant in *Scott* was barred from collaterally attacking record title. There is no comparable need for a speedy resolution to suits seeking recovery under a fire insurance policy.

We find, therefore, that the Reynolds properly attacked the attempted foreclosure, and that the subsequent sale conducted by an unauthorized substitute trustee failed to deprive the couple of its stake in the property. This stake in the building constituted an "insurable interest"; the conversion of this interest from a mortgaged home to a mortgaged pile of ashes entitled the Reynolds to recover under the fire insurance policy.[9]

### III. *The Burnt Offering*

Appellant Allstate also contests the trial court's award of $3500 attorney's fees. It argues first that attorney's fees must be denied since Texas law does not authorize an award of fees on the facts of this case. Alternatively, Allstate urges that the case must be remanded because the court failed to submit the question of fees to the jury, and because there was no evidence in the record to support the amount of the award. We disagree with appellant's claim that attorney's fees cannot be awarded in this case; however, we find that the issue of the amount of fees should have been submitted

to the jury, to be decided based on evidence in the record. In order to prevent a judicially–ordered burnt offering from defendant to plaintiffs, we vacate the award of $3500 attorney's fees and remand for a trial solely to determine a reasonable amount of attorney's fees.

### A. *The Commandment*[10]

 Under Texas law,[11] attorney's fees are not recoverable unless expressly authorized by statute.[12] *Innes v. Webb*, 538 S.W.2d 237, 240 (Tex.Civ.App.1976); *Heard v. City of Houston*, 529 S.W.2d 560, 564 (Tex.Civ.App.1975). The only relevant statute on the facts of this case is the general Texas attorney's fees provision, Tex.Rev. Civ.Stat.Ann. art. 2226 (Vernon 1971 & Supp. 1980). In the present case, the two parties dispute:

1. whether, in a suit on a fire insurance policy, attorney's fees are authorized under the version of the statute which existed at the time of the filing of the complaint;

2. whether such fees are authorized under the 1977 amendment to Article 2226; and

3. in the event that the 1977 amendment does authorize an award of fees in a fire insurance suit, whether the amended version of the statute can be relied on to recover fees in an action instituted before the effective date of the amendment.

---

9. The Reynolds, as cross appellants, argue that damages and double costs should be awarded, as provided by Federal Rule of Appellate Procedure 38, since "it is obvious that [a]ppellant's appeal is frivolous." We find no merit in this argument.

10. In addition to arguing that an award of attorney's fees is not authorized in fire insurance recovery cases, appellant correctly notes that the original pleading filed in this action asserts no claim for fees. However, at trial, the issue of fees was discussed by the two sides, and both parties subsequently submitted briefs discussing the propriety of an award of attorney remuneration on the facts of this case. As Judge Garza pointedly noted during the oral argument of this case, the fact that attorneys in a suit seek to be awarded fees can come as little surprise to an opposing party. Moreover, appellant was in no way prejudiced by plain-

tiffs' failure to include a claim for fees in the original complaint. Under these circumstances, we find that the issue of fees was tried with the implied consent of the parties, and may be treated, pursuant to Federal Rule of Civil Procedure 15, as if it had been raised in pleadings.

11. The issue of the availability of attorney's fees is a matter of substantive law, to be governed by the applicable state's authority in a diversity case. See *U. S. v. Midwest Construction Co.*, 619 F.2d 349 (5th Cir. 1980).

12. Of course, attorney's fees are also recoverable when specifically authorized by the terms of a contract between the parties. *E. g., Innes v. Webb, supra*, 538 S.W.2d at 240. The insurance contract at issue in the present case did not provide for the recovery of attorney's fees.

The version of Article 2226 which existed at the time of the filing of the Reynolds' complaint authorized recovery of attorney's fees in a suit "by any person ... having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account." An award of fees can be upheld only if the prevailing party's claim falls into one of the seven classes enumerated in the statute. *Lipschutz v. Gordon Jewelry Corp.*, 373 F.Supp. 375, 390 (S.D.Tex.1974). We cannot find that a claim for recovery under a fire insurance policy falls within any of the seven classes listed above.[13] Cf. *Tenneco Oil Co. v. Padre Drilling Co.*, 453 S.W.2d 814, 818 (Tex.1970) (the only contracts which will support an award of attorney's fees are contracts "for purely personal services or for labor"); *Tacker v. Phillips*, 473 S.W.2d 1, 2 (Tex. 1971) (same).

In 1977, Article 2226 was amended to allow recovery of attorney's fees in an eighth class of cases—in "suits founded on oral or written contracts." In so providing, the Legislature expressly excluded recovery under Article 2226 in certain types of insur- ance suits[14]—not presented by the facts of this case—in which the availability of attorney's fees is governed by other statutes. We find that both the plain meaning of the 1977 amendment and the express exclusion of certain specific types of insurance suits from the scope of its coverage indicate that attorney's fees may be awarded under the amended version of Article 2226 in suits seeking recovery under a fire insurance policy.

However, this amendment to Article 2226 allowing for recovery of attorney's fees on "oral and written contracts" became effective between the filing of the complaint and the commencement of the trial.[15] Thus, Allstate argues that to rely on the 1977 statutory amendment to grant attorney's fees in the present case would constitute an invalid retroactive application of the law.

The issue of retroactivity would pose a difficult question, absent legislative guidance. However, a subsequent legislative addition to the statute[16] has established that Article 2226 is remedial and that amendments to that Article apply to actions pending as of the date of the amendments. Since this action was pending at the time the 1977 amendment became effective and since that amendment clearly authorized

---

**13.** Appellees have argued that in a 1974 opinion of this court, Judge Thornberry expressly held that Article 2226 covered suits founded upon contracts, citing *Clark Advertising Agency v. Tice*, 490 F.2d 834 (5th Cir. 1974). In their brief, appellees quote from Judge Thornberry's opinion as follows: " '. . . we hold that it is broad enough to cover actions on contracts. ...' " Although these twelve words do appear in Judge Thornberry's opinion, appellees have strategically placed an ellipsis in the stead of crucial words of limitation. In actuality, Judge Thornberry held that the pre-1977 version of Article 2226 was "broad enough to cover actions on contracts for the sort of advertising and promotional services provided" in *Clark. Id.* at 838. Judge Thornberry permitted the plaintiffs in *Clark* to recover fees since their suit was one for "services rendered" and thereby fell within one of the seven classes delineated in Article 2226. Nothing in that case, aside from a finely and improperly tailored group of twelve words, in any way supports the Reynolds' claim for fees under the pre-1977 version of the statute.

**14.** Those suits in which the recovery of fees under Article 2226 is not authorized are claims based on insurance contracts subject to the provisions of: The Unfair Claim Settlement Practices Act (Article 21.21 2 Insurance Code); Article 3.62, Insurance Code; Chapter 387, Acts of the 55th Legislature, Regular Session, 1957 as amended (Article 3.62 1, Vernon's Texas Insurance Code); Article 21.21 Insurance Code, as amended; or Chapter 9, Insurance Code, as amended. None of these excluded provisions apply to the insurance contract involved in the present litigation.

**15.** The complaint in this action was filed on June 13, 1977, while the trial commenced on October 3, 1978. The amendment to Article 2226 allowing for the recovery of attorney's fees on "oral and written contracts" became effective on August 29, 1977.

**16.** In 1979, the Legislature added Section 2 to Article 2226 expressly providing "This Act is remedial in character and is intended to apply to all pending and future actions, regardless of the time of institution thereof or of accrual of any cause of action asserted."

the recovery of attorney's fees in suits brought to collect on a fire insurance policy, we hold that the Reynolds were entitled to an award of reasonable attorney's fees.

## B. *The Sacrifice Remanded*

■ The determination of reasonable attorney's fees is a question of fact that must be decided by the trier of fact based on competent evidence. *Martin v. Body,* 533 S.W.2d 461, 466 (Tex.Civ.App.1976); *see Stegall v. Stegall,* 571 S.W.2d 564, 566 (Tex. Civ.App.1978); *Cowhouse Dairy, Inc. v. Agristor Credit Corp.,* 566 S.W.2d 339, 341 (Tex.Civ.App.1978). Under the 1977 version of Article 2226—which, as we have ruled above, controlled the issue of attorney's fees in this case—no provision is made for withdrawing the issue from a jury or for the awarding of fees without the introduction of evidence into the record. The trial judge's failure to submit this question to the jury and his decision to award $3500 in fees without receiving any evidence as to the reasonableness of this figure were error. We therefore vacate the award of $3500 in attorney's fees and remand the case for a trial limited to a determination of reasonable attorney's fees.[17]

## IV. *Conclusion*

Appellees were properly allowed to attack the validity of Looney's record title and to prove that they possessed an insurable interest in the property covered by the fire policy, entitling them to recovery thereunder. Appellees successfully established that their interest in the smoldered property had not been snuffed out by Looney's attempted foreclosure. Finding no error in the proceedings below on the issue of recovery under the policy, we affirm the judgment of $17,820.00 plus interest.

Pursuant to statutory authority, appellees are entitled to recover reasonable attorney's fees. However, the lower court erred in setting the amount of fees without submitting the issue to the jury and receiving evidence on that question. Therefore, we vacate the award of $3500 in attorney's fees and remand the case solely for a determination of reasonable attorney's fees.

Having extinguished all of the embers of controversy, the Judgment of the court below is

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

---

17. Although the Reynolds do not contest the trial judge's awarding of fees without receiving evidence on the issue, they do argue that both parties mutually agreed to submit the issue of fees to the court. We do not think the transcript of the trial supports the conclusion that defendant Allstate agreed to remove consideration of the fee issue from the jury.

On remand, the determination of the proper amount of attorney's fees will be governed by the version of Article 2226 which exists at the time of the remand. Pursuant to the 1979 amendment, Article 2226 provides:

The usual and customary fees in such cases shall be presumed to be reasonable, but such presumptions may be rebutted by competent evidence. In a proceeding before the court, or in a jury case where the issue of the amount of fees is submitted to the court for determination by agreement, the court may in its discretion take judicial notice of the usual and customary fees in such matters and of the contents of the case file without receiving further evidence.

Therefore, the parties may now mutually agree to submit the issue to the court and to avoid the necessity of introducing further evidence. In the absence of such agreement, the issue should be presented to a jury and competent evidence should be offered.